506 A.2d 683

**MAYOR AND CITY COUNCIL OF BALTIMORE, et al.**

v.

**Richard C. BURKE.**

**No. 1219, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

April 4, 1986.

William R. Phelan, Jr., Asst. City Sol. (Benjamin L. Brown, City Sol., Otho M. Thompson, Associate City Sol. and Frank C. Derr, Asst. City Sol., on brief), Baltimore, for appellants.

James E. Grossberg (Bruce W. Sanford and Baker & Hostetler, on brief), Beltsville, for appellee.

Argued before BISHOP, BLOOM and KARWACKI, JJ.

·KARWACKI, Judge.

At the conclusion of oral argument on this appeal on February 19, 1986, we directed the immediate issuance of this Court's mandate affirming the order of the Circuit Court for Baltimore City (Byrnes, J.). We now explain our reasons for that decision.

The controversy stems from the refusal by the Mayor and City Council of Baltimore (the City) and Francis W. Kuchta, the Director of its Department of Public Works, the appellants, to release certain documents for inspection by Rich-

ard C. Burke, the appellee. Burke is a reporter for *The News American,* a Baltimore daily newspaper. The appellee, pursuant to the Maryland Public Information Act, Md. Code (1984), § 10–611 *et seq.* of the State Government Article (the MPIA), on April 8 and April 23, 1985, made written requests for permission to inspect and copy documents related to the design and construction of improvements to the Patapsco Waste Water Treatment Plant.[1] The Associate City Solicitor on behalf of the appellants responded on May 10 and May 14, 1985. After stating that some of the requested documents had already been released to the appellee and that some could not be found and were presumed destroyed, he reported that the remainder of the requested documents numbered approximately 160,000 pages, and that these documents would be released providing the appellee paid approximately $50,000 to cover copying at 25 cents per page and the cost of the "City employee's time based upon their [sic] salary to retrieve the documents and the portion of an Assistant City Solicitor's time to review each document to delete material which is not subject to disclosure." Finally, he denied the appellee access to "[r]eports, agreements, and contracts between the municipal government and the Alpha Corporation"[2] stating that those documents were:

---

1. This public works project of the City was originally shceduled for completion in December 1977, and was designed to expand the existing plant's daily treatment capacity from 15 million to 70 million gallons of sewage. The project, however, has been beset by problems. When the plant finally began operating in July of 1983, its deficiencies caused and continue to cause pollution of the Patapsco River.

2. The Alpha Corporation, a Virginia corporation based in McLean, Virginia, has been retained by the City as a claims consultant to review all documents associated with the construction of the plant in preparation for arbitration proceedings between the City and the J.W. Bateson Company (Bateson). Bateson is a Dallas, Texas construction firm that built the last phase of the treatment plant. Bateson has demanded over 12 million dollars from the City as compensation for additional work it was required to perform because of alleged design errors in the sludge processing building, a vital component in the treatment process.

[i]n the nature of interagency or intra-agency letters or memoranda that would not be routinely available in litigation. Also, they involve research and an investigation by city attorneys, whose disclosure would be contrary to the public interest. Therefore, the documents are not subject to disclosure pursuant to Section 10–618(a), (b), (d), and (f), State Government Article of the Annotated Code of Maryland.

The appellants initiated litigation on May 20, 1985 in the Circuit Court for Baltimore City for permission to continue their refusal to disclose the requested documents. The appellee answered and counterclaimed requesting, *inter alia,* the disclosure of all requested documents and a waiver of all fees associated with the disclosure. The appellee also filed motions for expedited review, for summary judgment, and to compel the appellants to prepare a "Vaughn"[3] index. A motions hearing was scheduled for July 23, 1985, one day prior to the deadline for the appellants' response to the appellee's motions. Nevertheless, the appellants' counsel appeared and argued the pending motions with the understanding that the court would review the appellants' answers to the motions before ruling. Two days after the hearing, the appellants filed their response to the appellee's motions. On August 12, 1985, the hearing judge filed his opinion and order granting summary judgment in favor of the appellee. The order provided:

1. Burke's Motion for Summary Judgment is GRANTED and the Mayor and City Council of Baltimore is hereby enjoined from withholding all documents

---

**3.** After the seminal decision of *Vaughn v. Rosen,* 484 F.2d 820 (D.C. Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), interpreting the federal Freedom of Information Act. 5 U.S.C. § 552 (1983). The *Vaughn* court remanded a case brought to compel disclosure by the Civil Service Commission under the federal Act with directions for the Commission to provide detailed justification of its claims and to itemize and index the documents or portions of them which were claimed to be exempt.

which are the subject of defendant's request pursuant to the Maryland Access to Public Records Act.

2. It is further ORDERED that all reasonable costs connected with the retrieval, inspection and copying of the documents be waived. The City is hereby given leave to object to a waiver of the total costs attributable to defendant's request to the extent that the costs may be unreasonable, or if the number of pages requested for reproduction exceeds 500.

3. It is further ORDERED that Mr. Burke be permitted to participate in the inspection process to the extent that his participation will minimize the costs associated with his request, and will not unduly further burden the City's effort to comply with this decision.

4. It is further ORDERED, that the City may present to the Court, *in camera*, before submission to defendant, particular documents that it believes should be exempted from this decision and the reasons for such claimed exemption.

The court, on November 25, 1985, stayed enforcement of its order pending resolution of this appeal.

The appellants present three questions for our determination:

I. Did the lower court err in ordering the immediate disclosure of the City's documents related to the pending arbitration proceeding?

II. Did the lower court err in ordering a waiver of reasonable fees for retrieval, inspection and copying of documents?

III. Did the lower court err in proceeding, without proper notice, with a hearing on the merits prior to the time for filing the appellants' responsive pleadings and in granting summary judgment despite the existence of factual disputes?

I.

Preliminarily, we stress that the appellants did not resist disclosure of the public records in question pursuant to any

of the specifically recognized exemptions from inspection provided for in §§ 10–615 through 10–618 of the MPIA. Rather, they invoked the jurisdiction of the court to permit them to continue their denial of inspection and copying of certain of the requested documents pursuant to § 10–619. That provision of the MPIA states:

> (a) *Permitted.*—Whenever this Part III of this subtitle authorizes inspection of a public record but the official custodian believes that inspection would cause substantial injury to the public interest, the official custodian may deny inspection temporarily.

> (b) *Petition.*—(1) Within 10 working days after the denial, the official custodian shall petition a court to order permitting the continued denial of inspection.

> (2) The petition shall be filed with the circuit court for the county where:

>> (i) the public record is located; or

>> (ii) the principal place of business of the official custodian is located.

> (3) The petition shall be served on the applicant, as provided in the Maryland Rules.

> (c) *Rights of applicant.*—The applicant is entitled to appear and to be heard on the petition.

> (d) *Hearing.*—If, after the hearing, the court finds that inspection of the public record would cause substantial injury to the public interest, the court may pass an appropriate order permitting the continued denial of inspection.

Patently, by proceeding under this section the appellants conceded that the records in question were subject to inspection and merely sought a temporary respite from the disclosure requirements of the MPIA. The Court of Appeals in *Cranford v. Montgomery County*, 300 Md. 759, 776, 481 A.2d 221 (1984), recognized this limited purpose of § 10–619. It there commented:

> In the unusual case where a public policy factor should control but none of the specific exemptions applies, the

Md. Act provides for a special procedure to safeguard the material from disclosure. Under § 3(e)[4] a custodian may apply to a court for an order permitting him to deny disclosure in order to prevent substantial injury to the public interest.

Justifying their continued denial of inspection of public records which they conceded were subject to the disclosure requirements of the MPIA, the appellants asserted that such disclosure would do substantial injury to the public interest because it would result in the loss of a strategic advantage in the City's defense of the Bateson claims which are presently in arbitration. They argued that such a public disclosure would jeopardize the City's position in the pending Bateson arbitration and in possible subsequent legal proceedings growing out of the Bateson claims. Since the hearing judge rejected this attempted justification for the non-disclosure by summary judgment, we will assume the accuracy of the appellants' assertions in reviewing his action. *Natural Design, Inc. v. Rouse Co.*, 302 Md. 47, 62, 485 A.2d 663 (1984); *Washington Homes v. Inter. Land Dev.*, 281 Md. 712, 716–18, 382 A.2d 555 (1978).

The intent of the MPIA in favor of disclosure of public records is unmistakable. *Cranford v. Montgomery County, supra*, 300 Md. at 771, 481 A.2d 221; *Faulk v. State's Attorney for Harford Co.*, 299 Md. 493, 506, 474 A.2d 880 (1984); *Moberly v. Herboldsheimer*, 276 Md. 211, 227–28, 345 A.2d 855 (1975). Section 10–612(a) mandates that "[a]ll persons are entitled to have access to information about the affairs of government and the official acts of public officials and employees." Section 10–612(b) directs that the MPIA "shall be construed in favor of permitting inspection of a public record, with the least cost and least delay to the person or governmental unit that requests the inspection." Having clearly expressed this bias in favor of disclosure,

---

4. Section 10–619 was formerly codified as § 3(e) of Article 76A of Md.Code (1957, 1980 Repl.Vol., 1983 Cum.Supp.). No substantive change was effected by the recodification.

the General Assembly has within §§ 10–615, 10–616, and 10–617 directed the custodian of specific kinds of public records to deny inspection of them. Furthermore, in § 10–618 the Legislature has permitted denial of inspection of other specific types of public records where the custodian believes that such inspection "would be contrary to the public interest." Even where a public record is subject to inspection under §§ 10–615 through 10–618, § 10–619 authorizes a court, after conducting a hearing, to permit the continued denial of inspection where "the court finds that inspection of the public record would cause substantial injury to the public interest."

■ In *Moberly v. Herboldsheimer, supra,* a newspaper columnist sought the disclosure of records of a hospital, operated as an agency of the City of Cumberland, relating to the salary of the hospital's superintendent and the amount paid by the hospital for legal services. In resisting that disclosure under the MPIA the hospital invoked the version of § 10–619 then applicable,[5] alleging that the requested disclosure would do substantial injury to the public interest because it was sought with an improper motive, *i.e.,* the desire to expose the hospital and its superintendent to public ridicule. In affirming the trial court's refusal to sanction such nondisclosure, the Court of Appeals adopted the following reasoning of the trial court:

> The Court does not find it necessary to decide motives. If the hospital is a public institution, and the information sought does not come under one of the exceptions, the information sought should be made available.

> The Court does not find that invidious or improper motives, if any, can bring information otherwise revealable under the Act into the classification of Art. 76A 3.(f) where disclosure would do 'substantial injury to the public interest.'

---

5. Md.Code (1957, 1975 Repl.Vol.), Art. 76A, § 3(f).

276 Md. at 227–28, 345 A.2d 855. We view the City's assertion in the case *sub judice* that the requested disclosure, because it would reveal weaknesses in its legal position with regard to the claims Bateson was asserting against it, as analogous. We cannot subscribe to the proposition that a "substantial injury to the public interest" will result from a hearing of all evidence relevant to the proper resolution of Bateson's claims against the City. In *Cranford v. Montgomery County, supra,* the exemption from disclosure provided under § 10–618(b) was discussed. That section shields "any part of an inter-agency or intra-agency letter or memorandum that would not be available by law to a private party in litigation with the unit" if its disclosure would be contrary to the public interest. The Court commented:

> The description of Document 60 in part explains that it was withheld because it "contains completion dates which may be of benefit to claims currently in the process by the general contractor and would not be in the County's best interests to have disclosed as an admission." There is no privilege to withhold documents from routine civil discovery because they may be harmful to the client's cause.

300 Md. at 788, 481 A.2d 221. In the instant case the City conceded that it was not entitled to the exemption from disclosure provided by § 10–618(b) when it sought relief from disclosure under § 10–619. We hold that the tactical disadvantage which the City may suffer in resolving the pending Bateson claims because of the disclosure is insufficient to establish a "substantial injury to the public interest" permitting the denial of inspection pursuant to § 10–619.

## II.

Section 10–621 governs charges by a custodian of public records for the retrieval and reproduction of documents subject to disclosure under the MPIA. It provides:

(a) *In general.*—Subject to the limitations in this section, the official custodian may charge an applicant a reasonable fee for the search for, preparation of, and reproduction of a public record.

(b) *Limitation on search and preparation fees.*—The official custodian may not charge a fee for the first 2 hours that are needed to search for a public record and prepare it for inspection.

(c) *Limitation on reproduction fees.*—(1) If another law sets a fee for a copy, printout, or photograph of a public record, that law applies.

(2) The official custodian otherwise may charge any reasonable fee for making or supervising the making of a copy, printout, or photograph of a public record.

(3) The official custodian may charge for the cost of providing facilities for the reproduction of the public record if the custodian did not have the facilities.

(d) *Waiver.*—The official custodian may waive a fee under this section if:

(1) the applicant asks for a waiver; and

(2) After consideration of the ability of the applicant to pay the fee and other relevant factors, the official custodian determines that the waiver would be in the public interest.

Furthermore, § 10–612(b) directs that the MPIA "shall be construed in favor of permitting inspection of a public record, with the least cost and least delay to the person ... [who] requests the inspection." Moreover, the federal Freedom of Information Act contains a similar fee waiver provision at 5 U.S.C. § 552(a)(4) which has been liberally construed in favor of the media or other requesters who will provide broad public dissemination of the information sought. *Ettlinger v. F.B.I.*, 596 F.Supp. 867, 872 (D.Mass. 1984); *Eudey v. CIA*, 478 F.Supp. 1175, 1177 (D.D.C.1979); *Rizzo v. Tyler*, 438 F.Supp. 895 (S.D.N.Y.1977). These interpretations are persuasive in our interpretation of the MPIA. *Cranford v. Montgomery County*, 300 Md. at

771–75, 481 A.2d 221; *Faulk v. State's Attorney for Harford Co.,* 299 Md. at 506, 474 A.2d 880.

█ The hearing judge found that in "contrast to the explicit concerns of the statute, the City's justification for its denial of a fee waiver reveals that it is primarily concerned with the 'onerous' burden placed upon the City, particularly in terms of money and manpower." The court concluded that since "the City did not sufficiently consider the significant benefit in making available to the Baltimore community information concerning one of the City's major financial undertakings," that its denial of the appellee's request for a fee waiver was arbitrary and capricious. We agree.

It is apparent from the record that the appellants considered no more than the expense to theCity of locating and duplicating the documents (without trying to find ways to minimize the expense, such as allowing the appellee to view the documents in person and copy only what he deemed important), and the perceived ability of the appellee, as an employee of a Baltimore newspaper, to pay the City's projected fee. The appellants did not abide by § 10–621(d)(2) which mandates consideration of "other relevant factors" and making a determination of whether the waiver would be in the public interest. Certainly those relevant considerations would include the health hazard created by the discharge of inadequately treated sewage into the Patapsco River, the importance of public exposure of the delayed and extremely costly improvements to the Patapsco Waste Water Treatment Plant, and the danger that imposing a fee for information upon a newspaper publisher might have a chilling effect on free exercise of freedom of the press.

### III.

█ The appellants suffered no harm by proceeding with the hearing on the appellee's motion for summary judgment prior to the time for filing their response thereto. The

appellants' conclusory allegation of prejudice is disputed by the record. The July 23 hearing was held only one day before the appellants were required to file their response, and the appellants had received actual notice of the hearing six days prior to its being held. The appellants' counsel argued extensively at that hearing in opposition to the summary judgment. Further, the hearing judge did not issue his order granting summary judgment in favor of the appellee until August 12, well after he had received the appellants' opposition to the appellee's motion and their written brief supporting that opposition.

Section 10–623(c) of the MPIA directs that cases arising under this Act shall take precedence on the court's docket, and shall "be expedited in every way." On the day of the expedited hearing, the court gave counsel for the appellants an opportunity to postpone the hearing if counsel felt that they had insufficient time to prepare their response to the appellee's motions. Counsel for the appellants stated that they were prepared to respond. Their claim to the contrary at this time is not preserved for our review. Rule 1085.

Finally, our review of the record in the light most favorable to the appellants has convinced us that there were no material facts in dispute relevant to the issues which are discussed in Parts I and II of this opinion. For the reasons already expressed, Judge Byrnes did not err in resolving those issues as a matter of law.