REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1204

September Term, 2015

ACTION COMMITTEE FOR TRANSIT, INC.
*ET AL.*

v.

TOWN OF CHEVY CHASE

Woodward,
Kehoe,
Zarnoch, Robert A.,
    (Retired, Specially Assigned),
JJ.

Opinion by Kehoe, J.

Filed: September 1, 2016

The Maryland Public Information Act (the "MPIA")[1] permits government agencies to charge a reasonable fee for expenses incurred in the course of responding to a request to inspect public records. *See* § 4-206 of the General Provisions Article ("GP"), Md. Code Ann. (2014). The MPIA also allows an agency to waive fees upon the request of an applicant if, "after considering the applicant's ability to pay and other relevant factors, the official custodian determines that the waiver would be in the public interest." GP § 4-206(e)(2). The dispositive issue in this appeal is whether an official custodian may take a community organization's past criticisms of the agency into account in deciding whether granting the organization's fee waiver request is in the public interest.

The Action Committee for Transit ("ACT") and Benjamin Ross appeal from a judgment of the Circuit Court for Montgomery County in favor of the Town of Chevy Chase.[2] ACT and Ross assert that the Town violated the MPIA when it denied their requests for waivers of fees that the Town proposed to charge them for responding to requests for copies of certain Town records. The circuit court concluded that the Town did not violate the Act and entered judgment accordingly. ACT and Ross present two issues, which, for purposes of analysis, are best expressed in terms of whether the circuit

---

[1]The MPIA is codified in Title 4 of the General Provisions Article, Md. Code Ann. (2014).

[2]The Town of Chevy Chase is not to be confused with any of the other similarly-named municipalities located in Montgomery County: Chevy Chase Village, Section 3 of the Village of Chevy Chase, The Village of Chevy Chase Section 5, the Village of North Chevy Chase, and the Town of Chevy Chase View. Of these, Chevy Chase Village is the oldest, having been incorporated by an act of the General Assembly in 1910. *See* ch. 382 of the Laws of 1910.

court erred in granting summary judgment to the Town as to the claims of ACT on the one hand, and Ross on the other.[3]

We will vacate the judgment of the circuit court and remand this case for further proceedings.

BACKGROUND

"In cases interpreting an MPIA request, facts necessary to the determination of a motion for summary judgment may be placed before the court by pleadings, affidavit, deposition, answers to interrogatories, admission of facts, stipulations and concessions." *Prince George's County v. The Washington Post Co.*, 149 Md. App. 289, 304 (2003) (internal quotation and citation omitted). Our summary of the facts is drawn from those sources.

ACT is a non-stock, non-profit organization that advocates for public transportation in Montgomery County, Maryland. Ross is a published author who has written extensively in print and electronic media about issues regarding the Purple Line. He lives

---

[3]ACT and Ross filed a joint brief and present the following questions:

1. Whether the Circuit Court erred in holding that the Town of Chevy Chase was permitted to use "past negative comments" by a public-interest group and a journalist as a basis for denying their requests for fee waivers under the MPIA.

2. Whether the Circuit Court erred in holding that the Town of Chevy Chase was permitted to deny fee waiver requests based on "other relevant factors" it neither articulated nor explained.

The problem with this articulation of the issues is that it blurs some factual differences between ACT and Ross and their respective requests.

in Bethesda. The Town is a Maryland municipal corporation and, as such, is subject to the MPIA. Todd Hoffman, the Town Manager, is the official custodian of the Town's public records. *See* GP § 4-101(f).[4]

The controversy between the parties concerns the Purple Line, a proposed light rail public transit system that, if constructed, will extend from Bethesda to New Carrollton. The Purple Line is a multi-billion dollar project that is proposed to be funded through a combination of federal, State, local, and private sources.[5] Current plans call for a portion of the Purple Line to be located within in a former railroad right-of-way which is currently used as a linear park known as the Georgetown Branch Trail or the Capital Crescent Trail. Part of this trail is located within the Town. Town residents and property owners will be directly affected by the construction and operation of the Purple Line. The Town opposes the project.[6]

ACT and Ross allege that, in 2008, and as part of its effort to oppose construction of the Purple Line, the Town retained the law firm of Sidley Austin and a civil engineer to review the Maryland Transit Administration's Draft Environmental Impact Statement for

---

[4]The MPIA defines "Custodian" in GP § 4-101(f) as:
(1) the official custodian; or
(2) any other authorized individual who has physical custody and control of a public record.

[5]*See* https://perma.cc/QUN6-ZCPU/, last visited July 15, 2016.

[6]There has been other litigation in Maryland courts regarding the Capital Crescent Trail. *See Montgomery County v. Bhatt,* 446 Md. 79 (2016).

the Purple Line. ACT and Ross allege that the Town spent approximately $434,000 in that effort. ACT and Ross further allege that in 2014, the Town retained the law firm, of Buchanan Ingersoll & Rooney (the "Buchanan Firm"), which in turn subcontracted with two lobbying firms, Chambers, Conlon & Harwell, LLC (the "Chambers Firm") and Alexander & Cleaver, P.A. (the "Alexander Firm"). The Town also retained the public relations firm Xenophon Strategies. All four firms were retained to represent the Town's interests in lobbying both the federal and state governments to deny funding for the Purple Line. The Town paid the Buchanan Firm $20,000 monthly for its services.

Early in 2014, the Washington Post and other news sources published several articles detailing the Town's relationship with the four firms, including some details on the monthly fees the Town paid for the firms' services. Additionally, an article in the Washington Post reported that one of the partners in the Buchanan Firm was Robert L. Shuster, whose brother, Bill Shuster, is the chair of the Transportation and Infrastructure Committee of the United States House of Representatives.[7] Spurred by the information contained in these articles, ACT and Ross sought access to the Town's records pertaining to the Town's relationship with these firms. To that end, both ACT and Ross filed a series of MPIA requests with the Town.

ACT's first request was submitted in February, 2014. ACT sought documents

---

[7]The record indicates that Mr. Shuster the lawyer made it clear to the Town Council that he would not lobby Mr. Shuster the congressman before the Town Council agreed to hire the Buchanan Firm.

regarding the Town's relationship with the Buchanan Firm; it did not request a fee waiver. The Town provided copies of all non-privileged documents that were responsive to the request without charge because the time spent by Town staff in responding was less than two hours. *See* GP § 4-206(c) ("The official custodian may not charge a fee for the first 2 hours that are needed" to respond to a request to inspect public records.).

ACT filed two additional requests in April. The first sought documents pertaining to the Town's relationship with the Chambers and Alexander Firms, as well as any additional documents pertaining to the Buchanan Firm. The second request sought access to privileged documents relating to the Buchanan Firm and documents concerning the Town's relationship with Xenophon Strategies.

In response to the first April request, Hoffman, the Town Manager, stated that the Town staff would begin searching for documents responsive to the request upon ACT's deposit of $700, noting that it would not provide the two hours of free research because ACT's request was on the same general topic as its February request. As to the second April request, Mr. Hoffman stated that it would provide two hours of free research, but still required a deposit of $250 before it would begin research on the requested documents.

ACT then requested a fee waiver for both April requests. The Town denied the waiver request on April 23, 2014. By way of explanation, Mr. Hoffman stated that "[i]t is anticipated that the Town will expend a significant amount of time researching and

5

processing [t]he requests."[8]

On May 21, 2014, ACT submitted another request for documents, asking for substantially the same information sought in the April requests. Meriam Schoenbaum, a part-time news blogger, submitted the request on ACT's behalf, requesting a fee waiver based upon ACT's status as a non-profit and its intent to disseminate the information, and her own status as a journalist.[9] The Town denied Ms. Schoenbaum's request for a fee waiver on June 20, 2014 on both grounds. By way of explanation, the Town's letter stated that: "In your request, you outline your arguments in support of a waiver of all fees . . . . Please be advised your request for a waiver has been considered and denied." The Town further stated that it would not provide the two hours of free research because the previous request filed by ACT related to the same general topic.

This brings us to the two MPIA requests that are at issue in this appeal: ACT's request dated October 15, 2014 (the "ACT Request"), and Ross's request, which was one of two filed by him on November 10, 2014.

The ACT Request sought:

> copies of public records relating to contracts, agreements, and communications between [the Town] and the four firms the Town retained to provide services in relation to the Purple Line public transit project.

---

[8]In *Mayor and City Council of Baltimore v. Burke*, 67 Md. App. 147, 157 (1986), this Court stated that a custodian of records must consider relevant factors beyond the cost that it will incur in responding to a request as a basis for denying a fee waiver request.

[9]Ms. Schoenbaum listed her journalistic credentials in her request.

ACT also seeks full minutes of closed sessions held by the Town Council . . . . ACT makes this request in order to promote the public's understanding of the Town and the conduct of its public officials in conducting public business relating a major public infrastructure project. ACT intends to contribute significantly to the public's understanding by making public the requested records and the information the records contain.

As part of its request, ACT sought a waiver of fees on three grounds:

(1) it was entitled to a fee waiver because "the information requested will serve the public interest and contribute significantly to the public's understanding of the business, activities, and public-money expenditures of a government body related to a major public infrastructure project";

(2) it was not seeking the information for any commercial purpose; and

(3) ACT did not have the financial resources to pay any fee associated with its request because it was a grassroots, public interest organization run by volunteers, and because its charter requires that any assets to be donated to a 501(c)(3) charitable organization upon dissolution. However, ACT did not attach any documentary support for these assertions.[10]

On October 27, 2014, counsel for the Town responded to ACT. First, the Town denied ACT's request for a fee waiver. By way of explanation for the denial, counsel stated:

As you know, the [MPIA] authorizes the Town to charge a reasonable fee

---

[10]The ACT Request was submitted by means of a letter from its counsel to the Town Attorney. In the letter, ACT's counsel stated that her firm was representing ACT on a *pro bono* basis.

for making copies and a reasonable fee for researching its records. In your request, you outline your arguments in support of a waiver of all fees associated with the request. Please be advised the request for a waiver has been considered and is denied.

Additionally, counsel explained that the Town would not provide two hours of free research because the request related "to the same general topic" as ACT's previous request. Finally, counsel provided ACT with an estimate of $879 for the fee the Town would charge to respond to the request and requested that amount as a deposit before the Town processed ACT's request.

On November 10, 2014, Ross submitted two MPIA requests to the Town. The first was titled: "Re: Maryland Public Information Act Request on behalf of Action Committee for Transit[.]" Ross almost immediately withdrew this request and submitted a second request titled "Re: Maryland Public Information Act Request[.]" Titles aside, the two requests were largely identical, although Ross's second request contained more detail on his status as a member of the media. In both letters, he specified that he was submitting the request as a member of the media:

> I am submitting the following request as a member of the media. I am a published author who writes on issues of public interest, such as chemical pollution and urban development. I have written extensively on issues regarding the Purple Line in both print and electronic media. For the last 14 years, I have regularly contributed articles and (in more recent years) blog posts to *Dissent* magazine and I have written there on issues regarding the Purple Line. I also write at Greater Greater [sic] Washington blog. The purpose of this blog is to provide information about elected officials, development, traffic, and other matters impacting the Greater Washington area, including Montgomery County, Maryland.

8

Included in his letter were requests for fee waivers. He listed all of the same grounds included in the ACT Request, but additionally listed several other grounds related to his status as a member of the media, including that: (1) he frequently writes books and articles concerning issues impacting the public, (2) that he has written before on developments concerning the Purple Line, and (3) that providing him more information on the Purple Line would be in the public interest because it, and the Town's expenditures, have garnered coverage in mainstream news outlets.

On November 21, Hoffman denied Ross's request for a fee waiver. He stated:

> In your request, you identify yourself as a member of the media as a basis for a waiver of all fees associated with the request. Please be advised that the request for a waiver has been considered and is denied. We do not believe this request is being made in your capacity as a member of the media. This belief is based on the first request you submitted and then immediately withdrew on November 10, 2014, which clearly indicated it was being submitted on behalf of [ACT], along with your known affiliation with ACT. Accordingly, the Town will expect payment in full for all fees associated with the request.

– The Circuit Court Proceedings –

In January, 2015, ACT and Ross filed a joint complaint in the circuit court challenging the Town's denial of their fee waiver requests. The complaint alleged that the Town violated the MPIA when it: (1) denied their requests for access to the minutes of the closed meetings between the Town and the lobbying and public relation firms; (2) denied their requests for waivers of the fees associated with the requests; (3) denied

9

providing them with two hours of free research for the requests;[11] and (4) denied ACT's

and Ross's requests to review the minutes of closed meetings in which the Town's

relationship with the Buchanan Firm and the other lobbyists were discussed.

In their prayer for relief, ACT and Ross requested that the Town provide access to all

of the requested documents, and that the fees associated with the requests be waived.

Additionally, ACT and Ross requested that the Town provide them with copies of

minutes of the closed meetings of the Town Council that pertained to the lobbyists.

Finally, they asked that the court award them attorneys' fees pursuant to § 4-362(f) of the

MPIA.[12]

In response, the Town filed a motion to dismiss, or, in the alternative, a motion for

summary judgment. In its motion, the Town took a two-fold approach:

*First*, it argued that it denied ACT's and Ross's fee waiver requests based on the

grounds contained in ACT's and Ross's requests themselves; as the Town explains this

logic: "[T]he Town reviewed ACT's arguments and all of the 'relevant factors' stated by

ACT in support of its fee waiver request, considered those factors, and nevertheless

decided that the request was denied." (Emphasis deleted.) Notably, the Town did not

attach any affidavit from Hoffman, or from anyone else, describing the Town's actual

---

[11]ACT and Ross have pursued the two free hour issue on appeal.

[12]GP § 4-362(f) states:

If the court determines that the complainant has substantially prevailed, the court may assess against a defendant governmental unit reasonable counsel fees and other litigation costs that the complainant reasonably incurred.

10

decision-making process or explaining what specific considerations entered into the

Town's decision to deny the waiver request.[13] The only evidence in the record concerning

the Town's motives are the Town's denial letters themselves.

*Second,* the Town provided an explanation of its reasoning in its memorandum in

support of its motion. Among other reasons advanced by the Town was the following:

> The Town also did not agree that ACT or Ross's fee waiver requests were
> made in the 'public interest,' or even that the documents requested were
> sought for a public purpose. Rather, *the history of attacks on the Town by
> ACT/its members*, and previous requests made by ACT and its Officers
> demonstrated that Plaintiffs sought the fee waiver for their own personal
> interests in retaliating against the Town for its opposition to the proposed
> Purple Line project. *ACT had posted false accusations against the Town on
> ACT's website and had repeatedly attacked the Town* because of the
> Town's opposition to the proposed Purple Line project, *accusing the Town
> of acting illegally*. The Town, like any private citizen, is entitled to take a
> position on the public issue. *ACT and its members engaged in a smear
> campaign and utilized the Open Meetings Act Compliance Board*[14] and,

---

[13]The Town's motion was supported by an affidavit from Hoffman, but it stated only that a July 23, 2014 email from Schoenbaum to him, and Ross's MPIA requests were business records of the Town.

[14]The Open Meetings Act is codified at GP § 3-101–501. The Open Meetings Act

> is based on the philosophy that public business should be performed in a
> public manner, which is accessible to interested citizens, and that this type
> of open government is essential to the maintenance of a democratic society.
> Such open government ensures the accountability of government to the
> citizens of the State[,] . . . increases the faith of the public in government
> and enhances the effectiveness of the public in fulfilling its role in a
> democratic society.

*Tuzeer v. Yim, LLC*, 201 Md. App. 443, 464 (2011) (quotation marks and citations omitted).

The Open Meetings Compliance Board is a State agency established by GP § 3-201. Its
(continued...)

now this Court, *to retaliate against the Town* for its position on the proposed Purple Line project. Thus, the *Town rightfully disbelieved ACT and Ross's claims that the request for the fee waiver was in the 'public interest.'* If anything, *ACT and Ross appeared to desire the documents without paying the fee for the 'commercial' or proprietary purpose of attacking the Town for its opposition to a project supported by ACT*. Thus, the Plaintiffs' fee waiver requests were carefully considered and all factors militated against a finding by the Town that a fee waiver was in the 'public interest' or was warranted.

(Emphasis added; citation deleted.)

To buttress these assertions, the Town attached copies of press releases issued by ACT in March of 2014 as exhibits to the memorandum. One release criticized the Town Council for "misinforming" the public about the nature of the services that the Buchanan Firm would provide to the Town. Another stated that the Town "broke the law when its council met in secret to hire an anti-Purple Line lobbyist."[15] Additionally, in its

---

[14](...continued) purpose is to provide advisory opinions regarding complaints that public bodies violate the Act. GP § 3-204.

The particulars of the parties' Open Meetings Act dispute are beyond the scope of this opinion but may be found in the Compliance Board's ruling on the complaint. *See* 9 *OMCB* 99 (2014).

[15]Although the Town takes great umbrage at this statement, the Open Meetings Compliance Board did in fact conclude that the Town had violated public notice provisions of the Open Meetings Act with regard to a meeting between the Town Council and members of the Buchanan Firm. The Compliance Board stated:

The Act's disclosure measures serve partly to enable a public body to assure [its] constituents that when the public body is meeting behind closed doors, it is doing so legally and for a reason. The Council's use of them for the November 26 meeting might have avoided this complaint and its neglect of them violated the Act.

(continued...)

12

memorandum, the Town asserted that it was entitled to deny Ross's request because: a) it was justified in not crediting Ross's claim that he filed his request in his capacity as a member of the media; b) in any event, Ross was not a member of the media because contributing to a news blog did not qualify one as a member of the media; and c) the records that ACT had sought did not pertain to a matter of public interest.

After a hearing, the circuit court issued a bench opinion granting the Town's motion for summary judgment. The court denied ACT's and Ross's requests for access to minutes of the closed sessions of Town Council meetings.[16] The court concluded that, since the MPIA does not state that an agency or government must name the factors it relied on in deciding to deny the fee waiver, the Town's statement that it considered relevant factors was sufficient:

> The letters that the plaintiffs have cited cite reasons to grant the waiver in them, and the town has responded by saying that it's considered those requests [sic] in the letters that were sent, and it has denied them. . . .
>
> So, the town considered the information that was presented to it, said in its response have [sic] considered that request, and, based on one of their factors being past negative comments and other relevant factors they were denying the request. There's nowhere that it says that they have to report what those factors are. . . . Defendant maintains they were considered.

This appeal followed.

---

[15](...continued)
9 *OMCB* at 101.

[16]ACT and Ross do not challenge this aspect of the court's judgment on appeal.

ANALYSIS

## I. The Statutory Framework

The MPIA was enacted in 1970, four years after Congress enacted the federal Freedom of Information Act ("FOIA"),[17] often referred to as the "archetype of public information acts." *Blythe v. State*, 161 Md. App. 492, 513 (2005). The public policies advanced by the FOIA and the MPIA are virtually identical. *Id.*; *see also Fioretti v. Maryland State Bd. of Dental Examiners*, 351 Md. 66, 76 (1998). The principal purpose of the MPIA is to "provide the public the right to inspect the records of the State government or of a political subdivision." *Fioretti*, 351 Md. at 76. The provisions of the MPIA "shall be construed in favor of allowing inspection of a public record, with the least cost and least delay to the person . . . that requests the inspection." GP § 4-103(b). This right is a cornerstone of democratic government:

> The Maryland Public Information Act is based on the enduring principle that public knowledge of government activities is critical to the functioning of a democratic society; that a government of the people, by the people and for the people must be *open* to the people.

Office of the Attorney General, MARYLAND PUBLIC INFORMATION ACT MANUAL (the "MPIA Manual") Preface (14th ed., October 2015) (emphasis in original); *see also ACLU v. Leopold*, 223 Md. App. 97, 109 (2015).

---

[17]FOIA is codified at 5 U.S.C.A. § 552.

The MPIA provides that the official custodian of requested public records is ordinarily entitled to charge an applicant a reasonable fee[18] for: (1) "the search for, preparation of, and reproduction of a public record prepared, on request of the applicant, in a customized format;" and (2) "the actual costs of the search for, preparation of, and reproduction of a public record in standard format, including media and mechanical processing costs." GP § 4-206(b). However, the custodian's ability to charge a reasonable fee is subject to certain limitations. For instance, the ability to collect a fee for the search and preparation of the materials is limited by GP § 4-206(c), which states that: "The official custodian may not charge a fee for the first 2 hours that are needed to search for a public record and prepare it for inspection." Furthermore, § 4-206(e) provides:

(e) The official custodian may waive a fee under this section if:

(1) the applicant asks for a waiver; and

(2) (i) the applicant is indigent and files an affidavit of indigency; or

(ii) after consideration of the ability of the applicant to pay the fee and other relevant factors, the official custodian determines that the waiver would be in the public interest.[19]

---

[18]A "reasonable fee" is defined in GP § 4-206(a) as "a fee bearing a reasonable relationship to the recovery of actual costs incurred by a governmental unit."

[19]The fee waiver provision under FOIA is similar, and reads:

Documents shall be furnished without any charge or at a charge reduced below the fees established under clause [] if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester. 5 U.S.C.A. § 552(a)(4)(A)(iii).

15

Maryland's appellate case law on MPIA fee waiver requests is limited to a single decision, *Mayor and City of Baltimore v. Burke*, 67 Md. App. 147 (1986), which we will discuss later. In addition to *Burke*, the parties cite to the MPIA Manual and a 1996 opinion of the Attorney General, 81 Op. Att'y Gen. 154 (1996).

The MPIA Manual is a document written and updated by the Office of the Maryland Attorney General. In its preface, it states that it is "designed to be a resource for a range of users, from members of the public and the media who request information, to the government officials who have the responsibility to implement the Act's requirements." Chapter 7 of the Manual pertains to fees under the Act. It states:

> To determine whether a waiver is in the public interest, the official custodian must consider not only the ability of the applicant to pay, but also other relevant factors. A waiver may be appropriate, for example, when a requestor seeks information for a public purpose, rather than a narrow personal or commercial interest, because a public purpose justifies the expenditure of public funds to comply with the request. . . . In deciding whether to waive a fee, an official custodian may find it helpful to look at case law interpreting the comparable FOIA provision[.]

MPIA Manual at 7-3.

The Manual goes on to identify several relevant factors identified in federal FOIA decisions. These factors include "the potential that the requested disclosure would contribute to public understanding and the significance of that understanding." *Id.* at 7-4 (citing *Project on Military Procurement v. Dept. of Navy*, 710 F. Supp. 362 (D.D.C. 1989); and *Larson v. CIA*, 843 F.2d 1481 (D.C. Cir. 1988). Another factor identified in

the Manual is whether the material sought pertains to "a matter of genuine public concern[.]" *Id.* (citing *Crooker v. Bureau of Alcohol, Tobacco and Firearms,* 882 F. Supp 1158 (D. Mass. 1995)).

The Attorney General issued an opinion discussing fee waivers in the context of the MPIA. 81 Op. Att'y Gen. 154 (1996). In his opinion, the Attorney General stated that "the broad term 'public interest' does not permit a precise listing of relevant factors." *Id.* at 157. However, the Opinion lists several examples of factors that may contribute to the public interest determination, such as whether disclosure of records will shed light on "a public controversy about official actions," or on "an agency's performance of its public duties." *Id.* at 157-58.[20]

---

[20]Although Opinions of the Attorney General have a clearly established place in the firmament of Maryland law, the MPIA Manual does not.

The constitutionally-prescribed duties of the Attorney General included providing written opinions "on any legal matter or subject" when required by the General Assembly, the Governor, and certain other State officials. *See* Maryland Constitution Article V, § 3(4). Opinions that address matters of significant public importance are "compiled and published annually as the Opinions of the Attorney General." Dan A. Friedman THE MARYLAND STATE CONSTITUTION 190 (2006).

Courts carefully consider, but are not bound by, the analyses and conclusions contained in Opinions of the Attorney General. *See, e.g., Fuller v. Republican Central Committee of Carroll County*, 444 Md. 613, 631 (2015); *ACLU of Maryland v. Leopold*, 223 Md. App. 97, 109 (2015). Attorney General's opinions are particularly helpful in discerning legislative intent. *Fuller*, 444 Md. at 631. This is because "[t]he Legislature is presumed to be aware of the Attorney General's statutory interpretation and, in the absence of enacting any change to the statutory language, to acquiesce in the Attorney General's construction." *Gomez v. Jackson Hewitt, Inc*., 427 Md. 128, 170 n.36 (2012).

No reported opinion has yet articulated what weight should be afforded to the MPIA Manual even though the Manual has been referenced in several reported appellate

(continued...)

17

## II. The Standard of Review

Judicial review of an agency's decision on MPIA requests is authorized by GP § 4-362, which permits a person who is denied inspection of a public record to challenge the denial by filing a complaint in the circuit court. In their complaint, ACT and Ross alleged, in effect, that the Town denied them access to public records by arbitrarily denying their meritorious requests for fee waivers. The standard of review for a circuit court's decision on a government's response to an MPIA request is "whether that court had an adequate factual basis for the decision it rendered and whether the decision the court reached was clearly erroneous." *Comptroller of Treasury v. Immanuel*, 216 Md. App. 259, 266 (2014), *aff'd Immanuel v. Comptroller*, ___ Md. ___, No. 87, September, 2015 Term (filed July 12, 2016) (citing *Haigley v. Dep't of Health & Mental Hygiene*, 128 Md. App. 194, 210 (1999)). "We review *de novo* any purported errors in interpreting the Act itself." *Id.* Because the circuit court ruled on the issues on a motion for summary judgment, we will review the circuit court's decision "only [upon] the grounds which the lower court relied in granting summary judgment."

---

[20](...continued)
decisions. *See Mayor & City Council of Baltimore v. Maryland Comm. Against the Gun Ban*, 329 Md. 78, 81 (1993)*; Leopold*, 223 Md. App. at 117; *Gallagher v. Office of the Atty. Gen.*, 127 Md. App. 572, 578 (1999), *rev'd on other grounds*, 359 Md. 341 (2000).

There is no constitutional or statutory mandate requiring the Attorney General to publish the MPIA Manual. Although the Manual may not rise to the dignity of a formal opinion by the Attorney General, it is nonetheless a useful, although not binding, resource for courts.

The parties do not dispute that our review of the circuit court's decision is *de novo.* However, they part company as to how we should review the agency's decision to deny the request for fee waivers. The Town, citing *Burke*, 67 Md. App. at 157, argues that its denial may be overturned only if its decision was arbitrary and capricious.

ACT and Ross argue for a different standard. They note that under FOIA, courts review an agency's decision to deny a fee waiver *de novo*. *See, e,g., Cause of Action v. F.T.C.*, 799 F.3d 1108, 1113 (D.C. Cir. 2015) ("We review *de novo* both the district court's grant of summary judgment and the agency's denial of the fee-waiver applications."). We don't find this argument to be persuasive.

The *de novo* review standard for FOIA fee waiver disputes is statutory. *See* 5 U.S.C.A. § 552(a)(4)(vii) ("In any action by a requester regarding the waiver of fees[,] . . . the court shall determine the matter de novo."). The same statute prescribes that "the court's review of the matter shall be limited to the record before the agency." *Id.*

In contrast, generally when a Maryland court addresses an MPIA dispute, the court considers not only the agency record, but also facts generated "by pleadings, affidavit, deposition, answers to interrogatories, admission of facts, stipulations and concessions." *Prince George's County v. The Washington Post Co.*, 149 Md. App. at 304. Were we to limit our review solely to the record before the agency, we would burden government units with the obligation of generating a record against the possibility that a dispute will end up in court.

### III. The Parties' Contentions

ACT and Ross argue that the circuit court erred in granting the Town summary judgment on two bases. First, they contend that the Town's letters of denial themselves were legally deficient under the MPIA because neither letter cited any relevant factor that justified denying the requests for fee waivers. Second, they note that the circuit court cited as one of the factors considered by the Town in denying their requests was the "past negative comments" made by ACT and Ross about the Town in the past. They assert that this is not a permissible basis to deny a fee waiver request. In response, the Town raises a variety of contentions.

The Town's primary contention is that its responses to ACT's and Ross's waiver requests were adequate as a matter of law and constitute conclusive evidence that its decisions to deny the requests were based upon valid reasons.

From these premises, the Town further asserts that:

(1) ACT's and Ross's claims to the contrary notwithstanding, the Town did not base its decision in whole or in part upon past negative comments made by Ross and/or ACT regarding the Town.[21]

---

[21]To buttress this contention, the Town asserts that:

the Circuit Court [did not] "hold" that the Town based its decision to deny the fee waiver request on "past negative comments" nor so-called "viewpoint discrimination."

(continued...)

(2) GP § 4-206(e) permits it to "consider the identity and purpose of the requester" as one element of the "other relevant factors" in deciding whether to grant a fee waiver. The Town cites the MPIA Manual:

> To determine whether a waiver is in the public interest, the official custodian must consider not only the ability of the applicant to pay, but also other relevant factors. A waiver may be appropriate, for example, when a requester seeks information for a public purpose, rather than a narrow personal or commercial interest, because *a public purpose justifies the expenditure of public funds to comply with the request*.

MPIA Manual, Chapter 7-3 (C).

The Town concludes by asserting that "the Town reasonably concluded that waiver of the fee was not in the public interest" because of:

---

[21](...continued)
We can dispose of this contention quickly. The relevant part of the court's decision is (emphasis added):

> So, the town considered the information that was presented to it, said in its response have considered that request, and, *based on one of their factors being past negative comments and other relevant factors they were denying the request.* There's nowhere [in the MPIA] that it says that they have to report what those factors are. There's no statute, and [*Mayor and City of Baltimore v.*] *Burke* doesn't speak to that. It says they have to consider them.

A "holding" is a "court's determination of a matter of law pivotal to its decision[.]" Bryan A. Garner BLACK'S LAW DICTIONARY (10th Ed. 2014) 849. Thus, the Town is, hyper-technically, correct—the circuit court did not *hold* as a matter of law that the Town's decision to deny the fee waiver requests was based on the Town's perception that ACT and Ross had commented negatively about the Town's past handling of the Purple Line issue. This is not because the circuit court didn't address the issue but because issue was a factual, as opposed to a legal, one. There can be no doubt that the court concluded that the Town's decision to deny the waiver requests was based in part on ACT's and Ross's past statements about the Town Council.

Mr. Ross's known affiliation with ACT. Because of the history and Mr. Ross's apparent duplicity, the Town obviously questioned the purpose of the fee waiver request, and whether it was for a public purpose and would be in the 'public interest.' Upon consideration of ACT/Ross's ability to pay and the 'other relevant factors,' the Town ultimately determined that the fee waiver would not be in the public interest and denied the request. As discussed, the Town was entitled to consider these circumstances in denying the fee waiver request and the decision was not 'viewpoint discrimination.'

## IV. ACT"s Waiver Request

Upon consideration of the parties' contentions, we conclude that the circuit court erred in granting summary judgment to the Town. The circuit court was correct that GP § 4-206 does not set out any requirement for a custodian's response to a waiver request. However, by stopping at that point, the court overlooked its own role in the process. When presented with a waiver request, a custodian must consider the ability of the applicant to pay the fee and other relevant factors to decide whether the waiver would be in the public interest. *See* GP § 4-206(e)(2). When a custodian's decision to deny a waiver request is appealed, the court must have sufficient information before it to satisfy itself that the custodian's decision was not arbitrary or capricious. This point is illustrated by our analysis in *City of Baltimore v. Burke*, 67 Md. App. 147 (1986).

Burke was a reporter for the *Baltimore News American* who sought records from the City of Baltimore pertaining to a malfunctioning sewer treatment plant owned by the City. *Id.* at 149. The City responded that approximately 160,000 pages of documents were responsive to Burke's request "and that these documents would be released providing the

22

appellee paid approximately $50,000 to cover copying at 25 cents per page and the cost of the 'City employee's time based upon their [sic] salary to retrieve the documents and the portion of an Assistant City Solicitor's time to review each document to delete material which is not subject to disclosure.'" *Id.* Burke challenged the City's refusal to grant a fee waiver. In affirming the circuit court's conclusion that the City's refusal to grant the fee waiver was arbitrary and capricious, we stated:

> It is apparent from the record that [the relevant City officials] considered no more than the expense to the City of locating and duplicating the documents . . . and the perceived ability of the appellee, as an employee of a Baltimore newspaper, to pay the City's projected fee. The appellants did not abide by 10-621(d)(2)[22] which mandates consideration of 'other relevant factors' and making a determination of whether the waiver would be in the public interest. Certainly those relevant considerations would include the health hazard created by the discharge of inadequately treated sewage into the Patapsco River, the importance of public exposure of the delayed and extremely costly improvements to the Patapsco Waste Water Treatment Plant, and the danger that imposing a fee for information upon a newspaper publisher might have a chilling effect on free exercise of freedom of the press.

Returning to the present case, the Town's response to ACT's waiver request was:

> In your request, you outline your arguments in support of a waiver of all fees associated with the request. Please be advised the request for a waiver has been considered and is denied.

This bald and conclusory statement provides no insight whatsoever as to the actual considerations that motivated the Town to deny the request. As *Burke* makes clear, a court must necessarily consider the actual decision-making process by the custodian in

---

[22]Currently codified as GP § 4-206(e)(2).

order to decide whether the custodian gave appropriate consideration to "other relevant factors." This necessarily calls for custodian to identify what relevant factors he or she considered. The Town's response to ACT fails comprehensively in this regard.

The Town's failure to explain the reasons for its decisions in its letter to ACT isn't necessarily fatal because the factual record can be further developed in the circuit court "by pleadings, affidavit, deposition, answers to interrogatories, admission of facts, stipulations and concessions." *Prince George's County v. The Washington Post Co.*, 149 Md. App. at 304. The Town did this by setting out its reasoning in its memorandum in support of its motion for summary judgment. We have set out a portion of that narrative earlier in this opinion. Our reading of that memorandum leaves us satisfied that a significant factor, if not the primary factor, in the Town's decision to deny ACT's request for a waiver was that the organization had previously criticized the Town officials for their opposition to the Purple Line.[23] Without belaboring the issue, we agree with appellants that the First Amendment's guarantee of free expression of speech protects persons from the imposition of financial burdens based upon the content of their speech. *See Rosenberger v. Rector and Visitors of the U Va.*, 515 U.S. 819, 828 (1995) ("[T]he government offends the First Amendment when it imposes financial burdens on certain speakers based on the content of their expression."); *see also Reed v. Town of Gilbert,*

---

[23]Representations of fact in a memorandum of law are not evidence. But the Town's narrative was not challenged by ACT or Ross and was accepted by the circuit court. In its brief to this Court, the Town seeks to downplay the significance of its assertions, but these efforts are unconvincing.

24

*Ariz.*, 135 S. Ct. 2218, 2223 (2015) ("Government discrimination among viewpoints is a 'more blatant' and 'egregious form of content discrimination . . . .'") (citing *Rosenberger*, 515 U.S. at 829.); *Ridley v. Massachusetts Bay Transp. Auth.*, 390 F.3d 65, 82 (1st Cir. 2004) ("The bedrock principle of viewpoint neutrality demands that the state not suppress speech where the real rationale for the restriction is disagreement with the underlying ideology or perspective that the speech expresses."). A decision based upon such unconstitutional considerations is clearly arbitrary and capricious.

## V. Ross's Request

We turn to the Town's denial of Ross's fee waiver request. The letter from the Town's counsel to Ross stated in pertinent part:

> In your request, you identify yourself as a member of the media[24] as a basis for a waiver of all fees associated with the request. Please be advised that the request for a waiver has been considered and is denied. We do not believe this request is being made in your capacity as a member of the media. This belief is based on the first request you submitted and then immediately withdrew on November 10, 2014, which clearly indicated it was being submitted on behalf of [ACT], along with your known affiliation with ACT. Accordingly, the Town will expect payment in full for all fees associated with the request.

Under different circumstances, we believe that Ross's request on his own behalf, coming within hours of Ross's request on ACT's behalf, might provide a basis for the

---

[24]Based on the record before us, we are satisfied that Ross's activities as a local news blogger makes him a member of the "media" for MPIA purposes. *See* Courts and Judicial Proceedings Article § 9-112(a) (defining "news media" as including "[a]ny printed, photographic, mechanical, or electronic means of disseminating news and information to the public.")

Town to conclude that Ross was acting as ACT's proxy. Had the Town's decision to deny

ACT's request been based on legitimate concerns, the Town might have been justified in

denying Ross's request as well. But, as we have just explained, the Town's denial of

ACT's request was arbitrary and capricious. Because the Town did not identify any

reason for denying Ross's request other than his affiliation with ACT, we hold that the

Town's decision to deny his waiver request was also arbitrary and capricious.

## VI. Conclusion

We hold that the circuit court erred when it granted the Town's motion for summary

judgment as to the fee waiver issue. What happens on remand is complicated by the fact

that the circuit court's judgment addressed another issue, namely, the court concluded that

the Town was not required to disclose minutes of closed meetings. Neither ACT nor Ross

has asserted that the court erred in this regard.

We will vacate the circuit court's judgment and remand this case for it to enter a

judgment that the Town is not required to disclose minutes of its closed meetings in

response to the MPIA requests from ACT and Ross that are the subject of this appeal. The

judgment will further provide the Town is obligated to respond to Ross's and ACT's

requests without charge to the appellants. Finally, the court must consider ACT's and

Ross's request for attorneys' fees pursuant to GP § 4-362(f). *See Caffrey v. Dep't of*

*Liquor Control for Montgomery County*, 370 Md. 272, 289 (2002) ("Generally, the

decision whether to award counsel fees to an eligible party under the MPIA rests within

26

the sound exercise of discretion by the trial judge.").[25]

**THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY IS VACATED AND THIS CASE REMANDED TO IT FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. APPELLEE TO PAY COSTS.**

---

[25]The General Assembly recently enacted amendments to the MPIA, effective since October 1, 2015, that changed the process of reviewing issues arising under the Act. The 2015 legislation added Subtitles 1A and 1B to the MPIA, and established two new entities responsible for resolving MPIA disputes without resort to litigation.

Subtitle 1A governs the newly-created State Public Information Act Compliance Board, which, is responsible for reviewing claims that a custodian of records charged an unreasonable fee for responding to a request. GP § 4-1A-04(a)(1). Subtitle 1B pertains to the newly-created Public Access Ombudsman that, in part, is responsible for mediating disputes concerning a custodian's denial of a fee waiver request. GP § 4-1B-04(a)(6).