*Sheriff Ricky Cox v. American Civil Liberties Union of Maryland*, No. 956, September Term, 2023. Opinion by Nazarian, J.

**MARYLAND PUBLIC INFORMATION ACT – WAIVER OF FEES – INITIAL BURDEN ON REQUESTOR–** Under the Maryland Public Information Act (the "MPIA"), a records requestor not relying on indigency has the initial burden of addressing at least three factors in its fee waiver request: its ability to pay the fee, any public benefit to disclosure of the requested records, and the public interest for a records custodian to grant the fee waiver. Md. Code (2014, 2019 Repl. Vol., 2023 Supp.), § 4-206(e)(2)(ii) of the General Provisions Article ("GP"); *Baltimore Police Dep't v. Open Justice Balt.*, 485 Md. 605, 651 (2023). Requestors also should identify any other relevant factors that, it contends, bear on whether the fee waiver is in the public interest. These can include "whether there is any public controversy about official actions" relating to the request, whether the request would shed light on that public controversy, and if so, "whether the complete denial of the waiver would exacerbate the public controversy." *Id.* at 662 (cleaned up), 668. In doing so, a requestor should justify its position as to why and how a specific or general controversy exists, why it is public in nature, and why disclosure might be beneficial in resolving the public controversy. The requestor further bears the initial burden of presenting its arguments, policies, facts, or demonstrative evidence in support of each factor it advances.

**MPIA – WAIVER OF FEES – DUTIES OF CUSTODIAN –** Although the MPIA doesn't require that a custodian state its reasons for denying a fee waiver in whole or in part, the cases applying it have imposed an affirmative obligation on records custodians to provide "a written explanation concerning the factors that were considered and how they were weighed," *id.* at 672 n.36, so the custodian can demonstrate that it grounded its discretionary decision in all relevant factors. *Id.* at 652.

**MPIA – DENIAL OF FEE WAIVER – ARBITRARY AND CAPRICIOUS REVIEW –** The Calvert County Sheriff arbitrarily and capriciously denied the request for a fee waiver made by the American Civil Liberties Union of Maryland. The record shows the Sheriff misapplied certain factors in its analysis and failed to consider other factors during the Sheriff's actual decision-making process.

**MPIA – ARBITRARY AND CAPRICIOUS AGENCY ACTION – REMEDY –** The proper remedy for the Sheriff's errors in making the public interest determination under GP § 4-206(e)(2)(ii) was a remand to the Sheriff for reconsideration of that determination, properly applying all relevant factors.

Circuit Court for Baltimore City
Case No. 24-C-22-001125

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 956

September Term, 2023

_____

SHERIFF RICKY COX

v.

AMERICAN CIVIL LIBERTIES UNION OF
MARYLAND

_____

Nazarian,
Leahy,
Harrell, Glenn T., Jr.
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Nazarian, J.

_____

Filed: August 28, 2024

* Wells, J., did not participate in the Court's
decision to designate this opinion for publication
pursuant to Md. Rule 8-605.1

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

In 2021, the American Civil Liberties Union of Maryland (the "ACLU") requested, under the Maryland Public Information Act, records from the Calvert County Sheriff[1] documenting the use of body searches, strip searches, and manual body cavity searches performed by his officers over a four-year span. The Sheriff estimated it would take approximately 366 hours to locate, review, and produce responsive records, imposed a fee of $12,271.50, and denied the ACLU's request for a fee waiver. The ACLU sued in the Circuit Court for Baltimore City, where the court reversed the Sheriff's decision to deny the ACLU's fee waiver.

The Sheriff appeals and asks us to hold that (1) his denial of the ACLU's fee waiver request was not arbitrary and capricious, and (2) if the denial was wrongful, the proper remedy is to remand to the Sheriff to reconsider the fee waiver. We hold that the recent Maryland Supreme Court decision in *Baltimore Police Department v. Open Justice Baltimore*, 485 Md. 605 (2023), controls the outcome, and we affirm the circuit court's decision that the Sheriff denied the fee waiver arbitrarily and capriciously, vacate the judgment, and remand to the circuit court with instructions to remand to the Sheriff to reconsider the ACLU's fee waiver request in light of this opinion.

## I.     BACKGROUND

The Maryland Public Information Act (the "MPIA") allows members of the public to access the records of public agencies. Md. Code (2014, 2019 Repl. Vol., 2023 Supp.),

---

[1] We refer to any action by any "officer or employee . . . who is responsible for keeping a public record" for the Office of the Sheriff of Calvert County, GP § 4-101(f) (defining "[o]fficial custodian"), simply as "the Sheriff."

§§ 4-301 *et seq.* of the General Provisions Article ("GP"). Producing public records can, depending on the scope of the request, be time-consuming and costly to the agency, so GP § 4-206 permits the official custodian of agency records to charge reasonable fees for the actual costs the agency incurs to fulfill an MPIA request. Importantly, GP § 4-206(e)(2)(ii) provides as well that an "official custodian may waive a fee" if, "after consideration of the ability of the applicant to pay the fee and other relevant factors, the official custodian determines that the waiver would be in the public interest."

On July 22, 2021, the ACLU[2] issued an MPIA request to the Calvert County Sheriff's Office requesting records of the Sheriff's use of "body searches, strip searches, and manual body cavity searches"[3] from 2017:

> a.     Any records showing the number of body searches, strip searches, and manual body cavity searches conducted each year from 2017 to the present;
>
> b.     Any video and/or audio recordings, including any dashboard camera footage and/or body camera footage for all strip searches and manual body cavity searches performed from 2017 to present; and

---

[2] From its brief: "The ACLU of Maryland is a non-profit organization dedicated to protecting the civil rights and civil liberties of Marylanders. In furtherance of its mission, the ACLU focuses on several key areas, including police practices and government transparency," and often utilizes the MPIA to author reports, disseminate information on its website, and otherwise "uncover and report on abuses of power within government agencies."

[3] From the Sheriff's policy: a "strip search" is "any search of an individual requiring the removal or rearrangement of some or all of the clothing to include the visual inspection of the naked skin surfaces of the genital area, buttocks, and/or breasts." A "manual body cavity search" is "any search which includes the removal of some or all of the individual's clothing, to include the visual inspection of the skin surfaces of the genital or anal areas, and also includes the manual body cavity search where some degree of touching or probing of the body cavities takes place."

c.      Any field observation reports, uniform criminal citation reports (DC/CR 45), criminal investigation/case reports, arrest reports, statements of charges (DC/CR 2), probable cause continuation sheets (DC/CR 4), and/or Traffic Stop Data Collection forms that relate to or arise out of any strip search or manual body cavity search performed from 2017 to present.

The request also asked for a fee waiver under GP § 4-206(e):

We anticipate that we will want copies of some or all of the records sought. Pursuant to Gen. Prov. § 4-206(e), we request that all fees related to this request be waived. . . .

We request this information to carry out our charitable mission. This request meets the criteria for a fee waiver under the MPIA . . . . The fee waiver would be in the public interest as: (1) the information sought would significantly contribute to the public understanding of the sheriff's office operations and activities; (2) there is a strong public interest in having the requested information available as there is a genuine public concern regarding policing; (3) the waiver would primarily benefit the public, not a narrow personal or commercial interest. In addition, please note that the ACLU of Maryland has a limited ability to pay for the copying and other charges associated with MPIA requests. . . . If the request is denied, please advise us in writing of the reason(s) for the denial and the cost, if any, for obtaining a copy of the requested records.

The request went unanswered, so on September 7th, the ACLU telephoned the Sheriff to ask about status of its request. The Sheriff confirmed that his policy permitted officers to perform the kinds of searches at issue, but he stated that officers do not "typically conduct" them. Instead, he explained, "when the circumstances require a strip or body cavity search, they are conducted by our deputies assigned to the Calvert County Detention Center within the facility." The Sheriff sent the ACLU a copy of his formal policy on strip searches and body cavity searches.

In response to this information, the ACLU limited its request to "the pre-trial population at the facility." The Sheriff responded that "[t]he Corrections Bureau does not and has never conducted body cavity searches. These searches are to be performed by a doctor at the local hospital." The Sheriff informed the ACLU that he was conferring with the Attorney General to ensure the records were disclosable.

At that point, the Sheriff conducted two cost analyses to assess the fee to locate, review, and produce the requested documents. The Sheriff explained that "[e]vidence of a strip/body cavity search is not a searchable data field through our case management software" requiring "the personal reading of individual" reports, summary forms, and audio/video recordings. The Sheriff estimated the number of hours to review and produce documents, multiplied it by the applicable staff members' hourly pay, and arrived at the fee of $12,271.50.

On November 8, 2021, the Sheriff sent a formal response to the MPIA request stating that he may have records relating to the request but it would cost $12,271.50 to produce them:

> The Criminal Investigations Bureau has approximately 240 cases where responsive records *__may__* exist. We have determined that the locating, review, and production of any responsive records will take approximately 240 hours / 30 plus business days of Bureau personnel time.
>
> The Detention Center likely possesses video and/or audio recordings of strip searches performed from 2017 to present at the detention center. We have determined that the locating, review, and production of any responsive records will take approximately 126 hours / 15 plus days of detention center and Information Technology Services personnel time.

> The Patrol Bureau had one known report of an incident where a suspect was found to have had CDS in his body cavity. That report will be disclosed.

The Sheriff also denied the request for a waiver of fees in one sentence, stating only that "there is no apparent public interest served by your request."

In a detailed, five-page letter dated December 21, 2021, the ACLU asked the Sheriff to reconsider his decision to deny the fee waiver. The letter outlined "five independent reasons" why the denial of the fee waiver constituted an abuse of discretion. The first three reasons cited the Maryland Attorney General's MPIA Manual:[4] (1) the requested records were sought "for a public purpose rather than to serve a personal or commercial interest," (2) the requested records would "shed light . . . on 'an agency's performance of its public duties,'" and (3) the requested records "will shed light on 'a public controversy about official actions.'" The ACLU also argued (4) that the Sheriff "has not identified any proper basis for denial" of the request, and (5) that the ACLU "qualifies for a waiver of all fees not associated solely with duplicating the requested records because it is a representative of the news media." The ACLU contended that the Sheriff's "conclusory statement that 'there is no public interest served' by the July 22 request comes nowhere close to 'identify[ing] what relevant factors' [were] considered so that a reviewing court may

---

[4] Off. of the Md. Att'y Gen., Maryland Public Information Act Manual (16th ed. 2021). The MPIA Manual is currently in its 18th edition, published October 2023, *available at* https://www.marylandattorneygeneral.gov/OpenGov%20Documents/PIA_manual_printable.pdf (last visited May 15, 2024), *archived at* https://perma.cc/F878-XVA8.

determine whether 'the actual decision-making process' leading to your denial of a fee waiver here was arbitrary and capricious."

Two weeks later, on January 6, 2022, the Sheriff denied the request for reconsideration in a letter, stating—again, in exactly one sentence—that "[g]iven the Sheriff's Office resources needed to satisfy the request, your request for a waiver of fees is denied."

On March 2, 2022, the ACLU filed suit in the Circuit Court for Baltimore City.[5] It alleged that the Sheriff[6] "violated the MPIA by denying the ACLU's request for a waiver of the fees associated with the July 22 request" and sought a declaration entering a judgment ordering the Sheriff to waive all fees, produce all documents, and award attorneys' fees.

The ACLU moved for summary judgment and the Sheriff filed a cross-motion for summary judgment. The ACLU's motion referred to a "deidentified list of complaints of alleged misconduct" by the Sheriff's Office and explained that it "issued its MPIA request after receiving a series of complaints about body searches, strip searches, and manual body cavity searches by officers of the Calvert County Sheriff's Office." The ACLU referred the

[5] The case, styled as a civil complaint, alleged as its sole count "IMPROPER DENIAL OF WAIVER OF FEES." Such a challenge, though, is "in the nature of an administrative mandamus action[,]" *Open Justice Balt.*, 485 Md. at 645, and must conform to Maryland Rules 7-401 through 7-403.

[6] The ACLU named the Office of the Sheriff of Calvert County and then-Sheriff Mike Evans in his official capacity as Sheriff initially as the defendants. The circuit court dismissed the Office of the Sheriff as a party in the case. Sheriff Ricky Cox was sworn in as the new Sheriff later and substituted in this litigation.

court to the "public controversy surrounding police uses of force" and argued that fees should not apply to the request. The crux of the ACLU's argument was that the record revealed that the Sheriff "considered only the cost of the request and . . . the ACLU's ability to pay, not whether the request was in the public interest."

The Sheriff's cross-motion for summary judgment served as the first instance in which he explained any rationale for denying the fee waiver request. He asserted that "on this record, there is no dispute that the relevant public interest factors were brought to the Sheriff's attention and by implication he rejected the ACLU's arguments on those factors when he determined that there was no apparent public interest." From there, the Sheriff argued, there is no public interest for a fee waiver when a requester refuses to collaborate with a records custodian by failing to narrow an "extremely broad" request and withholding information that would assist the agency in searching for records. He also stated that the ACLU "utterly failed to offer a compelling reason why the disclosure of the *specific* records sought was in the public interest." With respect to the public interest determination, the Sheriff concluded that because the request came from ACLU's Legal Advocacy Manager, "the request likely serves a personal and monetary interest, and not a public one." The Sheriff also argued that the ACLU failed to meet its burden of showing public interest in a fee waiver because "the ACLU did not provide a single news media story or documented event involving strip or body cavity searches . . . to substantiate its asserted public interest." Finally, the Sheriff asserted that "accepting these claimed public interests

7

for fee waivers on MPIA requests to law enforcement agencies would open floodgates for broad, open-ended records requests to agencies, which the public would have to subsidize."

At the hearing on April 14, 2023, the parties argued over the ultimate question of whether the ACLU was *entitled* to a fee waiver under the MPIA instead of the narrower issue of whether the Sheriff's consideration of the question was arbitrary and capricious. The ACLU argued there was a "statewide controversy over police use of force" and that its request "would shed light on [the Sheriff's] performance of his public law enforcement duties specifically related to invasive search techniques . . . [and] on a public controversy over official actions, namely police use of force." The Sheriff responded that "there [were] no media reports of any sort of strip search issues, and there's nothing in the record showing complaints," so his public interest decision was reasonable.

The circuit court granted the ACLU's motion, pointing to three Appellate Court opinions that controlled the outcome: *Mayor & City Council of Baltimore v. Burke*, 67 Md. App. 147 (1986), *Action Committee for Transit, Inc. v. Town of Chevy Chase*, 229 Md. App. 540 (2016), and *Baltimore Action Legal Team v. Office of State's Attorney of Baltimore City*, 253 Md. App. 360 (2021). Relying on those opinions, the circuit court held "that there's no dispute of material fact, and the ACLU is entitled to a fee waiver under [GP §] 4-206(e)(2)(ii)." The court entered an order granting the ACLU's motion, denying the Sheriff's motion, and reversing the Sheriff's denial of ACLU's fee waiver request, and ordering the Sheriff to pay all costs.

The Sheriff timely appealed. Additional facts will be discussed as necessary below.

8

## II.   DISCUSSION

This appeal presents two issues[7] which we have reworded: *first*, whether the Sheriff's denial of the ACLU's fee waiver request was arbitrary and capricious, and *second*, whether the matter should be remanded for the Sheriff to reconsider the relevant public interest factors. We agree with the ACLU and the circuit court that the Sheriff's decision was arbitrary and capricious, but we are constrained to vacate the circuit court's order on the remedy and remand to the circuit court with instructions to remand to the Sheriff to reconsider the fee waiver question, and we offer some principles to guide the Sheriff's analysis.

---

[7] The Sheriff lists the Questions Presented in his brief as:

> 1.    Did the circuit court err in determining that the Sheriff had acted arbitrarily and capriciously in denying the ACLU's request for a fee waiver, where there was no public controversy concerning strip search or body searches by the Calvert County Sheriff's Office, and where responding to the request would take more than 360 hours of employee time?
>
> 2.    If the Sheriff's decision was arbitrary and capricious, should this matter be remanded for the Sheriff to reconsider the request for a fee waiver?

The ACLU lists the Questions Presented in its brief as:

> 1.    Whether the Circuit Court correctly concluded that the Sheriff acted arbitrarily and capriciously in denying the ACLU's request for a public interest fee waiver, where ethe Sheriff considered only the expense to the agency and the ACLU's perceived ability to pay.
>
> 2.    Whether remand to the Sheriff for a third opportunity to consider the ACLU's request for a fee waiver would prejudice the ACLU given the lapse of time and the Sher[]iff's prior failures to give any meaningful consideration to the public interest factors.

9

Although the underlying judgment was decided on the ACLU's motion for summary judgment, which would be subject to *de novo* review, *Prince George's County v. The Wash. Post Co.*, 149 Md. App. 289, 305 (2003), the ACLU's initial challenge was, in fact, "in the nature of an administrative mandamus action." *Open Justice Balt.*, 485 Md. at 645–46 ("as to the denial of [a] fee waiver, there [i]s 'both a lack of an available procedure for obtaining review *and* an allegation that the action complained of is illegal, arbitrary, capricious or unreasonable'" (*quoting Mayor & City Council of Balt. v. ProVen Mgmt., Inc.*, 472 Md. 642, 669 n.9 (2021))). Thus, we owe the Sheriff deference and as the reviewing court, we may not disturb his denial of an MPIA fee waiver request unless that decision is arbitrary and capricious. *Id.* at 660. The "identification of the proper remedy in the event of an arbitrary or capricious decision to deny a fee waiver presents a question of law" that we review *de novo*. *Id.* at 644.

## A.     The MPIA & Fee Waiver Criteria.

The General Assembly enacted the MPIA to "provide the public the right to inspect the records of the State government or of a political subdivision within the State." *Glenn v. Md. Dep't of Health & Mental Hygiene*, 446 Md. 378, 384 (2016) (cleaned up). People and entities can request records under the Act for all kinds of purposes—private, financial, personal, or public. Consistent with this transparency law's "broad remedial purpose," our Supreme Court has emphasized repeatedly that "the provisions of the [MPIA] are to be liberally construed" to maximize transparency and minimize the delay and cost incurred by an MPIA applicant. *Id.* at 384–85 (cleaned up); *see also Action Comm. for Transit, Inc.*, 229 Md. App. at 555 ("The provisions of the MPIA 'shall be construed in favor of allowing

10

inspection of a public record, with the least cost and least delay to the person . . . that requests the inspection.'" (*quoting* GP § 4-103(b))). So at its core, the MPIA is a disclosure statute that is meant to ensure that the government is accountable to its citizens, and the disclosure the Act requires is a public service that the Act directs government agencies to provide.

The statute governing fees, GP § 4-206,[8] permits the official custodian of agency records to charge reasonable fees to recover the actual costs incurred in the course of

---

[8] The relevant text of GP § 4-206 provides:

> (a)(3) "Reasonable fee" means a fee bearing a reasonable relationship to the recovery of actual costs incurred by a governmental unit.
>
> (b)(1) Subject to the limitations in this section, the official custodian may charge an applicant a reasonable fee for:
>
> > (i) the search for, preparation of, and reproduction of a public record prepared, on request of the applicant, in a customized format; and
> >
> > (ii) the actual costs of the search for, preparation of, and reproduction of a public record in a standard format, including media and mechanical processing costs.
>
> (c) The official custodian may not charge a fee for the first 2 hours that are needed to search for a public record and prepare it for inspection.
>
> * * *
>
> (e) The official custodian may waive a fee under this section if:
>
> > (1) the applicant asks for a waiver; and
> >
> > (2)(i) the applicant is indigent and files an affidavit of indigency; or
> >
> > > (ii) after consideration of the ability of the applicant to

Continued . . .

fulfilling an MPIA request so long as those expenses "bear a reasonable relationship 'to the recovery of actual costs incurred by a governmental unit' for the search, preparation, and reproduction of requested public records." *Glass v. Anne Arundel County*, 453 Md. 201, 212 (2017) (*quoting* GP § 4-206); *see also Action Comm. for Transit, Inc.*, 229 Md. App. at 543–44 ("The [MPIA] . . . permits government agencies to charge a reasonable fee for expenses incurred in the course of responding to a request to inspect public records."). But the authority to charge fees shouldn't thwart the Act's core disclosure purposes—it is simply a mechanism for the government to steward the public resources required to serve this public function. And as such, GP § 4-206(e) authorizes an official custodian to grant a fee waiver request if either "the applicant is indigent and files an affidavit of indigency," GP § 4-206(e)(1)(i) or "after consideration of the ability of the applicant to pay the fee and other relevant factors, the official custodian determines that the waiver would be in the public interest." GP § 4-206(e)(2)(ii).

The General Assembly has "vest[ed] substantial discretion in agency custodians to determine whether a requested fee waiver is in the public interest," but our courts have found custodians' exercise of discretion under GP § 4-206(e) to be arbitrary and capricious when custodians fail to consider *all* the relevant factors in a case in the determination of whether the waiver would be in the public interest meaningfully. *Open Justice Balt.*, 485 Md. at 658–60; *see also id.* at 652–53 ("[A] custodian cannot properly determine whether

pay the fee and other relevant factors, the official custodian determines that the waiver would be in the public interest.

a fee waiver would be in the public interest until the custodian has considered all relevant factors."); GP § 4-206(e)(2)(ii). <u>The statute otherwise doesn't specify what those factors are and they will "vary with the context of each request</u>." *Baltimore Action Legal Team*, 253 Md. App. at 395–96 (emphasis added). At a minimum, though, custodians must consider "whether there would be any public benefit to the disclosure of the requested records." *Open Justice Balt.*, 485 Md. at 651, 653. And our courts have *required*, in the context of other fee waiver requests, that custodians consider factors relevant to the particular situation, for example, "'whether disclosure of records will shed light on a public controversy about official actions, or on an agency's performance of its public duties[,]'" *Open Justice Balt.*, 485 Md. at 662 (*quoting Baltimore Action Legal Team*, 253 Md. App. at 400), and "whether the complete denial of a waiver would exacerbate the public controversy." *Id.* at 668.

To summarize, a requestor who is not relying on indigency has the initial burden of addressing at least three factors in its fee waiver request: its ability to pay the fee, any public benefit to disclosure of the requested records, and the public interest for a records custodian to grant the fee waiver. *See* GP § 4-206(e)(2)(ii); *Open Justice Balt.*, 485 Md. at 651. Moreover, the applicant should identify any other "relevant factors" that, it contends, bear on whether the fee waiver is in the public interest. These can include "whether there is any public controversy about official actions" relating to the request, whether the request would shed light on that public controversy, and if so, "whether the complete denial of the waiver would exacerbate the public controversy." *Id.* at 662 (cleaned up), 668. In doing so, an applicant should justify its position as to why and how a specific or general controversy

13

exists, why it is public in nature, and why disclosure might be beneficial in resolving the public controversy. The applicant further bears the initial burden of presenting its arguments, policies, facts, or demonstrative evidence in support of each factor it advances. This doesn't require any particular form of evidence or proof, but obviously the more a requestor can present in support of its positions on these factors, the stronger its claim to a fee waiver will be.

From that initial showing, the custodian has the duty to resolve the request by exercising its discretion in two steps:

> [A]n official custodian has discretion under GP § 4-206(e)(2)(ii) to decide which other factors, besides the applicant's ability to pay the fee and whether there is any public benefit to disclosure, are relevant to the discretionary determination of whether granting a fee waiver would be in the public interest in a particular matter. The custodian also has discretion to decide, after considering all relevant factors, whether it would be in the public interest to grant a waiver of the fee in whole or in part.

*Open Justice Balt.*, 485 Md. at 654. And although the statute doesn't require in so many words that a custodian state its reasons for denying a fee waiver in whole or in part, the cases applying it have imposed an affirmative obligation on records custodians to provide "a written explanation concerning the factors that were considered and how they were weighed," and provide its explanation to the requestor. *See Open Justice Balt.*, 485 Md. at 672 n.36. After all, the statute, as interpreted by our Supreme Court, "requires the custodian to ground its discretionary decision to grant or deny the fee waiver request in its weighing of *all* relevant factors." *Id.* at 652; *see also id.* at 620 (custodians must "meaningfully consider all relevant factors in deciding whether to grant [a] requested fee waiver"). Just

14

as a requestor makes a stronger case for a fee waiver by offering more evidence of a public interest, purpose, or controversy underlying its request, a custodian makes a stronger case for its position with a more detailed explanation of its rationale for granting or denying it.

For a reviewing court to affirm an agency's denial of a fee waiver in a subsequent action for administrative mandamus, the record must contain "sufficient information . . . to satisfy [the court] that the custodian's decision was not arbitrary or capricious." *Action Comm. for Transit, Inc.,* 229 Md. App. at 561. And when conducting its review, the court isn't limited to the record before the agency, as in a typical agency appeal:

> The reviewing court assesses the actual decision-making process of the agency—not merely the bases it could rely on in deciding to deny the waiver. However, the reviewing court is not limited to the reasons the agency has advanced; it may consider other factors that reveal the agency's decision-making process, such as "pleadings, affidavit, deposition, answers to interrogatories, admission of facts, stipulations and concessions."

*Baltimore Action Legal Team*, 253 Md. App. at 392 (citations omitted); *see also id.* at 396 (using the agency's motion for summary judgment to discern the agency's "considerations for denying the fee waiver requests").

Although the custodian is vested with "substantial discretion" in its determination, we stress that the cases hold consistently that fee waivers are favored "'when a requestor seeks information for a public purpose, rather than a narrow personal or commercial interest, because a public purpose justifies the expenditure of public funds to comply with the request.'" *Action Comm. for Transit, Inc.*, 229 Md. App. at 556–57 (*quoting* MPIA Manual at 7–3)). Fee waivers aren't presumed, but agencies are required to take public

15

purposes seriously and consider requests for fee waivers in good faith and with an eye toward granting them.

### 1. Baltimore Action Legal Team

The Appellate Court and Supreme Court of Maryland held in two recent cases that law enforcement agencies acted arbitrarily and capriciously in the "consideration of . . . other relevant factors" under GP § 4-206(e)(2)(ii) when they denied fee requests on grounds that disregarded the public value of disclosure and overweighted the perceived burden on the agency. *Open Justice Balt.*, 485 Md. at 606; *Baltimore Action Legal Team*, 253 Md. App. at 360.

*Baltimore Action Legal Team*, a case on which the circuit court relied expressly, involved BALT's[9] records and fee waiver requests to the Office of the State's Attorney of Baltimore City ("SAO") for "[r]ecords relating to any investigations of all City police officers" and records of specific charges filed on January 30, 2020 "regarding a specific City police officer" and related investigations of that officer. 253 Md. App. at 368. The SAO estimated the cost of producing the records at approximately $18,000. *Id.* The circuit court granted summary judgment in favor of the SAO, but we reversed, "finding that the SAO arbitrarily and capriciously denied both fee waiver requests." *Id.* at 369.

This Court considered the SAO's rationale for denying the fee waiver requests, *i.e.*, that (1) "it believed BALT could pay"; (2) "it did 'not believe the requested disclosures

---

[9] BALT and Open Justice Baltimore together filed a complaint in the circuit court. *Id.* at 368. Both organizations aim to increase transparency in Baltimore City policing and government. *See id.* at 368 n.1.

16

would contribute significantly to the public's understanding of government operations"; and (3) it "did 'not know how the fee waiver will benefit the public as the resources needed to respond to this request . . . reduce the ability of the members of the [SAO] to handle their primary job functions . . . .'" *Id.* at 396.

With regard to the first waiver request, the one seeking full investigatory files, we rejected the SAO's rationale that the records were not "'meaningfully informative about government operations or activities,' such that they would not contribute to increased public understandings of those operations." *Id.* at 399. We "fail[ed] to see how the records of the SAO's criminal investigations of City police officers do not impact or concern the SAO's operations. The records would surely contain some insight into the activities of City police officers and would indicate whether a certain officer's actions were proper." *Id.* We added that "[w]ithout additional information in the record to sustain the SAO's denial we conclude that the denial was arbitrary." *Id.* And we elaborated that "public controversy" warranted the consideration of "other 'relevant factors'":

> Considering the well-documented public controversy surrounding use of force by City police officers, which was the motivation for BALT's requests, at least some consideration should have been given to whether disclosure of these records would inform the public about this subject. . . . Even if the SAO may have concluded a fee waiver was not in the public interest for some other reason, it still should have considered how the disclosure of the requested records may have aided the public's understanding of how the SAO was addressing allegations of police misconduct given the history of such allegations in the City and nationwide over the last half dozen years.

*Id.* at 400.

As for the second waiver request, which related to a specific police officer, we again

"reject[ed] the SAO's rationale," specifically the argument that "the SAO needed to assess other relevant factors outside of BALT's ability to pay and the SAO's burden to produce the information." *Id.* at 401. Applying the same reasoning as the first request, we held that "the records BALT requested would certainly shed light on the SAO's methods of investigation, how they focused their investigation, and the outcome of the investigation." *Id.* at 402. We declined to consider SAO's contention that "the release of such records [was] redundant" because "nowhere in the record did the SAO advance this as a reason for its denial" of the request at the time. *Id.*

### 2. Open Justice Baltimore

*Baltimore Police Department v. Open Justice Baltimore*, 485 Md. at 605, albeit decided after the circuit court's decision in this case, provides the most recent (and only Supreme Court of Maryland) guidance for reviewing fee waiver denials. In that case, Open Justice Baltimore ("OJB") requested records from the Baltimore Police Department ("BPD") that shed light on incidents involving use of force. *Id.* at 618. The BPD quoted OJB a cost of over $245,000 to produce the documents, and when OJB refused to narrow its request and insisted on a fee waiver, the BPD denied it. *Id.* Eventually, the Supreme Court of Maryland reversed that decision, holding that the fee waiver denial was arbitrary and capricious "because BPD failed to meaningfully consider all relevant factors in deciding whether to grant OJB's requested fee waiver." *Id.* at 620. The Court ordered a remand to BPD to reconsider OJB's requested fee waiver in light of the Court-ordered relevant factors. *Id.*

In the course of its opinion, the Court clarified the "[p]arameters" of an official

custodian's discretion over fee waiver decisions. *Id.* at 646. *First*, the Court held that if the custodian determines that a fee waiver would be in the public interest, it is without discretion to deny it nevertheless. *Id.* at 649. *Second*, "in every case where a custodian is considering a public interest waiver under subsection (e)(2)(ii), the custodian must at least consider whether there would be any public benefit to disclosure of the requested records. Beyond that factor and the applicant's ability to pay, . . . the MPIA vests the custodian with discretion to determine which factors are relevant to the public interest determination in a particular case." *Id.* at 651. Further, "once the custodian has determined what those 'other relevant factors' are, the custodian has discretion to decide whether, on balance, the consideration of those 'other relevant factors' along with the applicant's ability to pay and the benefit (if any) to the public from disclosure, shows that *waiver of the fee* would be in the public interest." *Id. Lastly*, the Court clarified that custodians may grant either full or partial waivers. *See id.* ("if, after balancing all of those factors, the custodian determines that a fee waiver (in whole or in part) would be in the public interest, the custodian at that point must grant the full or partial waiver").

The Court also mentioned "[t]hree related observations": that (1) "the statute requires the custodian to ground its discretionary decision . . . in its weighing of *all* relevant factors"; (2) "the custodian should consider, as part of the public interest determination, whether it would be in the public interest to waive all, part, or none of the fees for producing the requested records"; and (3) "'the other relevant factors' may vary from case to case." *Id.* at 652–53. On the third point, the Court held that "two related factors that likely will be relevant in many cases are the cost to the agency and the burden on the agency's personnel

19

to comply with the request." *Id.* at 653. But "[i]n every case" involving public interest waivers under subsection (e)(2)(ii), "the custodian *must* consider . . . whether disclosure of the requested records would provide benefit to the public." *Id.* (emphasis added).

"Given the similarities between *Baltimore Action Legal Team*" and OJB's request, the Court used that case as guidance in its public interest determination. *Id.* at 660–63. And then, the Court considered BPD's four stated rationales for denying OJB's fee waiver requests:

> (1) the asserted public interest purpose was too vague and general; (2) the records were unlikely to contribute significantly to the public understanding of government operations because they would be either redundant or unclear; (3) OJB either did not prove its inability to pay or BPD determined OJB could afford to pay; and (4) the cost and burden of the request.

*Id.* at 663.

The Court reviewed carefully each of the first three rationales and rejected them. *Id.* at 663–67. *First*, the Court held that the asserted public interest purpose of OJB's request was "plainly apparent," especially "[i]n light of the public controversy concerning misconduct by BPD officers" because "disclosure of the records was intended to assist the public in examining BPD's compliance with its own internal investigatory policies." *Id.* at 663–64. *Second*, the Court found that "[n]one of the sources that BPD has pointed to [as redundant to OJB's request] is equivalent to investigation files that specifically show how BPD investigated its officers' uses of force in particular cases." *Id.* at 665. To the extent BPD "reli[ed] on those sources as redundant of OJB's request [its reliance] was arbitrary and capricious." *Id. Third*, with respect to BPD's decision that OJB had the ability to pay,

20

the Court found that conclusion arbitrary and capricious. *Id.* at 667. The Court noted that "[t]he MPIA imposes no affirmative burden on requestors to demonstrate their inability to pay unless they are indigent" and "[n]othing in the record . . . provides any basis for BPD to conclude that OJB could afford to pay the full $245,670 fee." *Id.* at 666–67. *Finally*, the Court noted that BPD could consider the fourth rationale, the cost and burden of the request, but "given BPD's erroneous application of the other factors upon which it relied . . . and its failure to consider other relevant factors . . . BPD's consideration of the cost of production and personnel shortages does not render its determination to deny the fee waiver reasonable." *Id.* at 668 (*citing Burke*, 67 Md. App. at 157).

Citing *Baltimore Action Legal Team*, the Court also held that BPD's fee waiver denial was arbitrary and capricious because "in this case BPD was required to consider two additional related factors: whether disclosure would shed light on a matter of public controversy and whether the complete denial of a waiver would exacerbate the public controversy." *Id.* at 668. "BPD's historic lack of transparency about police misconduct issues has played a part in generating the public controversy about officers' use of force." *Id.* at 669. "In addition, BPD should have considered whether imposing the full fee on OJB would exacerbate the public controversy surrounding BPD's use of force by contributing to an appearance of a lack of transparency . . . furthering the perception that BPD has something to hide." *Id.* at 670. The Court held that the appropriate remedy was a remand to the BPD to reconsider the public interest determination. *Id*. at 671–72.

**B.     The Sheriff's Consideration Of Whether Disclosure Of The Records Was In The Public Interest Was Arbitrary And Capricious.**

21

In this case, the Sheriff challenges the circuit court's judgment that it denied arbitrarily and capriciously the fee request accompanying the ACLU's request for records of the Sheriff's use of "body searches, strip searches, and manual body cavity searches" from 2017 to 2021. When the Sheriff informed the ACLU that such searches "are conducted by our deputies assigned to the Calvert County Detention Center within the facility," the ACLU limited its request to "the pre-trial population at the facility." The Sheriff quoted a cost of $12,271.50 to produce responsive records and denied the ACLU's fee waiver request.

Again, we may not disturb the Sheriff's denial of the ACLU's fee waiver request unless that decision was arbitrary and capricious. *Open Justice Balt.*, 485 Md. at 660. "The arbitrary and capricious standard is highly contextual" and a reviewing court "should affirm decisions of less than ideal clarity so long as the court can reasonably discern the agency's reasoning." *Id.* at 660 (cleaned up). But "[t]he reviewing court may not uphold the agency order unless it is sustainable on the agency's findings and for the reasons stated by the agency." *Id.* (cleaned up).

The ACLU has argued all along that the Sheriff's fee waiver denial was wrongful because "[t]he record establishes that the Sheriff considered only the expense to his office and the ACLU's perceived ability to pay a fee." Throughout the administrative process, the Sheriff explained his denials to the ACLU curtly. Indeed, we can reproduce the Sheriff's full analysis, initially and on reconsideration, *verbatim* in two sentences:

- "Because your organization has the ability to pay and there is no apparent public interest served by your request, your request for a waiver of fees is denied."

22

- "Given the Sheriff's Office resources needed to satisfy the request, your request for a waiver of fees is denied."

Although the Sheriff's failure to explain the reasons for his denial wasn't "necessarily fatal," *Action Comm. for Transit, Inc.*, 229 Md. App. at 561, the factual record developed in the circuit court still needed to demonstrate that the decision was not arbitrary or capricious. *See Baltimore Action Legal Team*, 253 Md. App. at 393 ("the denial may still be upheld on appeal if facts generated by pleadings, affidavits, and other documents provide the court with sufficient information to satisfy itself that the custodian's decision was not arbitrary or capricious" (cleaned up)). And again, the record supporting a denial must demonstrate that the Sheriff "meaningfully consider[ed] all relevant factors in deciding whether to grant [a] requested fee waiver." *Open Justice Balt.*, 485 Md. at 620.

The record of the Sheriff's analysis here consists of the two denial letters, such as they are, and the reasons articulated in his cross-motion for summary judgment. *First*, the Sheriff believed that the ACLU had the ability to pay. *Second*, the Sheriff tabulated, and seemed to weigh conclusively, the Sheriff's Office resources needed to fulfill the request. *Third*, the Sheriff concluded that the ACLU failed to "offer a compelling reason why the disclosure of the *specific* records sought was in the public interest," and, relatedly, expressed the view that the ACLU was unable to "substantiate its asserted public interest." *Finally*, the Sheriff concluded that the request likely served a personal and monetary interest rather than a public one.

*1.* *The Sheriff's determination that the ACLU had the ability to pay the fee was not arbitrary and capricious and the Sheriff's consideration of its own resources needed to fulfill the request was considered appropriately.*

*First*, the Sheriff did not err in considering the ACLU's ability to pay, a required factor under GP § 4-206(c). The record reveals that the ACLU has over $5 million in assets, and it never advanced seriously an inability to pay as a reason for requesting the fee waiver. Although having assets isn't necessarily the same as having free cash lying around to spend, the Sheriff's conclusion that the ACLU had the ability to pay a $12,271.50 fee was not, on this record, arbitrary and capricious. *Cf. Open Justice Balt.*, 485 Md. at 667 (where "BPD accepted [OJB's] representation that it could not afford to pay" and there was "[n]othing in the record . . . provid[ing] any basis for BPD to conclude that OJB could afford to pay the full $245,670 fee"). Similarly, the Sheriff was entitled to consider the extent of the Sheriff's Office resources needed to fulfill the request. *See id.* at 667 ("It was appropriate for BPD to consider the monetary cost of compliance and the burden on its personnel to fulfill OJB's request as factors in the public interest determination.").

The ACLU contends, however, that these were the *only* factors the Sheriff considered, and that he violated this Court's decision in *Burke*, 67 Md. App. at 157 (considering only expense and requestor's ability to pay is failure to consider "other relevant factors" and abuse of discretion) by doing so. This was undoubtedly true during the pre-litigation phase of this dispute. Unlike the typical administrative law case, though, in this context we are required to consider as well whether the additional reasons the Sheriff offered in his cross-motion for summary judgment can justify the denial. *See Baltimore*

*Action Legal Team*, 253 Md. App. at 393.

        2.      *The Sheriff's (lack of) consideration of all the "other relevant factors" under GP § 4-206(e)(2)(ii) was arbitrary and capricious.*

The statute required the Sheriff to consider *all* relevant factors in making his fee waiver decision. *Open Justice Balt.*, 485 Md. at 652 ("the statute requires the custodian to ground its discretionary decision . . . in its weighing of *all* relevant factors"). He didn't. *First*, "in every case where a custodian is considering a public interest waiver under subsection (e)(2)(ii), the custodian *must at least* consider whether there would be any public benefit to *disclosure* of the requested records." *Id.* at 651 (emphasis added). From the inception of this request, the Sheriff has claimed baldly and reflexively, without any explanation, that disclosure of the requested records is not in the public interest. As we did in *Baltimore Action Legal Team*, 253 Md. App. at 360, we reject the Sheriff's reliance on that sort of reasoning here. It is sheer nonsense to claim that there is no public interest in ascertaining whether law enforcement might be engaged in improper invasive search activity—or, for that matter, that it might not be. *Second*, *Open Justice Baltimore* also required the Sheriff to consider two additional factors that he backhanded here: "whether disclosure would shed light on a matter of public controversy and whether the complete denial of a waiver would exacerbate the public controversy." 485 Md. at 668. Again, disclosure of the facts—whatever they reveal—indisputably *would* shed light on a matter of public controversy, and revealing the records could only help *diminish* the controversy. *Last*, the Maryland Supreme Court directed that records "custodian[s] should consider, as part of the public interest determination, whether it would be in the public interest to waive

25

all, part, or none of the fees for producing the requested records." *Id.* at 653. The Sheriff unquestionably failed to consider a partial fee waiver, a full fee waiver, or any fee waiver at all.

a. <u>The Sheriff failed to consider meaningfully whether there is public benefit to the disclosure of records of the Sheriff's use of body searches, strip searches, and manual body cavity searches</u>.

The Sheriff was required to consider "whether disclosure of the requested records would provide benefit to the public." The Sheriff asserted that there is no public interest in the disclosure because (1) the ACLU failed to "offer a compelling reason why the disclosure of the *specific* records sought was in the public interest," (2) the ACLU was unable to "substantiate its asserted public interest," and (3) the request likely served a personal and monetary interest rather than a public one. The Sheriff contends that the Maryland appellate decisions finding arbitrary and capricious denials of fee waiver requests are distinguishable because "[t]hose cases all involved matters of substantial preexisting public interest, either in the form of large and well-publicized public works projects or extensive and well-publicized concerns about the operations of the Baltimore Police Department." The ACLU responds that it had received complaints about the searches at issue, which it described at oral argument as the "most invasive police tactics used in a small community." We reject the Sheriff's position that *disclosure* inures to the public benefit only when there is a matter of documented, "substantial preexisting public interest." Indeed, it turns the core transparency purposes of the Act on their head to condition access to public documents on a requester's ability to document a problem at the

26

time of the request. The whole purpose of requesting public records is to attempt to understand and document a possible problem.

We are guided yet again by *Baltimore Action Legal Team* and *Open Justice Baltimore*. In *Baltimore Action Legal Team*, "[w]e fail[ed] to see how the records of the SAO's criminal investigations of City police officers do not impact or concern the SAO's operations." 253 Md. App. at 399. We explained that "[t]he records would surely contain some insight into the activities of City police officers and would indicate whether a certain officer's actions were proper." *Id.* Here, the requested documents likewise "would surely contain some insight into the activities" of the Sheriff's use of body searches, strip searches, and manual body cavity searches and "indicate whether a certain officer's actions" in performing such searches "were proper." *Id.* A "substantial preexisting public interest" doesn't require advance documentation of the problem—the question is whether *disclosure* of public records on the subject would serve the public interest.

In *Open Justice Baltimore*, the Court held that the public interest purpose of OJB's request was "plainly apparent," especially "[i]n light of the public controversy concerning misconduct by BPD officers" because "disclosure of the records was intended to assist the public in examining BPD's compliance with its own internal investigatory policies." 485 Md. at 663–64. Likewise, the requested documents would "assist the public" in examining whether the Sheriff's use of body searches, strip searches, and manual body cavity searches comports with constitutional requirements. *Id.* at 664. The public interest purpose of the ACLU's request was also "plainly apparent." *Id.* at 663. "[P]ublic controversy concerning

27

misconduct" by police officers is not limited necessarily to Baltimore City. *Id.* at 663. We'll discuss this in more detail below.

Importantly, the Sheriff doesn't argue that the records have already been disclosed or would fail to provide insight into his office's operations, nor does he try to argue that somehow disclosure of the records does not comport with the purpose of the MPIA, that the records don't exist, or that they can't be produced. There is no legal burden on the ACLU—as the Sheriff contends—to "show[] that strip searches right now, at this particular time that this request is received, is a matter of public interest." And it's hard to understand how the Sheriff can argue that the question of whether law enforcement is performing invasive searches of citizens wouldn't be a matter of public interest—again, in whichever direction the facts point. Regardless, we agree with the ACLU that it "was not required to *prove* that Calvert County police officers had engaged in misconduct in order to show a public interest." The MPIA and our case law impose no such burden.

In his motion for summary judgment, the Sheriff cited two D.C. Circuit opinions that, he argued, put requestors to "the burden . . . to establish public interest when the subject of the request involves alleged government misconduct," citing *McCutchen v. Department of Health & Human Services*, 30 F.3d 183, 188 (D.C. Cir. 1994), and *Davis v. Department of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992). But neither case has anything to do with the public interest standard in fee waiver decisions. Those cases involved federal Freedom of Information Act ("FOIA") *exemptions* from disclosure for documents involving *competing privacy interests* of certain individuals. The Sheriff hasn't asserted any privacy interests here, and we decline to extend a FOIA exemption test to the fee

28

waiver public interest determination where there is no competing privacy interest (nor was one ever raised) and where the MPIA operates under a presumption that disclosure is appropriate and a direction that fee waivers are favored when the requested documents serve a public purpose. *Action Comm. for Transit, Inc.*, 229 Md. App. at 555 (MPIA "'shall be construed in favor of allowing inspection of a public record, with the least cost and least delay to the person . . . that requests the inspection'" (*quoting* GP § 4-103(b)); *id.* at 556–57 (fee waivers favored "'when a requestor seeks information for a public purpose, rather than a narrow personal or commercial interest'" (*quoting* MPIA Manual at 7–8)).

*Finally*, the Sheriff concluded arbitrarily and capriciously that the ACLU's request likely served a personal and monetary interest rather than a public one in its analysis of whether the disclosure was in the public interest. That conclusion—which is supported by nothing in the record whatsoever—merits discussion on what the public interest means in the MPIA context. Like BALT and OJB, the ACLU is a non-profit that serves a charitable mission of uncovering and reporting on abuses of power within government agencies, particularly law enforcement agencies. That is not a commercial interest. Contrast the ACLU with, for example, *Comptroller of Treasury v. Immanuel*, 216 Md. App. 259, 262 (2014), in which the MPIA requestor was "engaged in the business of locating the owners of unclaimed property held by the Comptroller and, then, for a fee, reuniting them with their former possessions." "To further his business," the requestor asked the Comptroller for "a list of the names and addresses of those entitled to the 5,000 most valuable property accounts" in order to collect a fee. *Id.* Mr. Immanuel was entitled to the records he sought, albeit in a different form than he requested, and there is nothing wrong with requesting

29

public records for private purposes. But there is a difference in how agencies should treat fee waiver requests from parties asserting a public interest and purpose, and there is nothing in this record from which the Sheriff could have concluded reasonably that the ACLU sought information of abusive searches for commercial, personal, or monetary gain.

Given the "broad remedial purpose" of the MPIA to "provide the public the right to inspect" government records, *Glenn*, 446 Md. at 384–85 (cleaned up), the Sheriff's insistence that the ACLU "substantiate its public interest" in government records disclosing the use of invasive searches was arbitrary and capricious, as was his conclusion that the request likely served a personal and monetary interest rather than a public one.

b.　The additional relevant factors surrounding issues of "public controversy" extend to the Sheriff's use of body searches, strip searches, and manual body cavity searches.

If an applicant asserts that a "matter of public controversy" underlies the records request, the Sheriff *must* consider "whether disclosure would shed light on a matter of public controversy and whether the complete denial of a waiver would exacerbate the public controversy." *Open Justice Balt.*, 485 Md. at 668. There's no dispute that the Sheriff didn't consider these factors—the decision in *Open Justice Baltimore* hadn't been decided yet when the Sheriff considered the ACLU's request. And so, there is no basis for us to hold that these relevant factors were considered properly during the Sheriff's "actual decision-making process . . . ." *Baltimore Action Legal Team*, 253 Md. App. at 392 ("The reviewing court assesses the actual decision-making process of the agency—not merely the bases it could rely on in deciding to deny the waiver."). Nevertheless, the Sheriff contends that there is no public controversy on his use of body searches, strip searches, and manual

30

body cavity searches that would trigger the requirement that he consider additional "relevant factors" in his fee waiver analysis. He states that "the ACLU has never identified an actual 'public controversy' about the use of body or strip searches by Calvert County deputy sheriffs."

We are skeptical somewhat of the Sheriff's attempt to distinguish the ACLU's MPIA request from *Baltimore Action Legal Team* and *Open Justice Baltimore* on the grounds that the alleged police misconduct in those cases involved the Baltimore Police Department. *Baltimore Action Legal Team* referenced "police misconduct" and "the history of such allegations in the City and *nationwide* over the last half dozen years." 253 Md App. at 400 (emphasis added). Nor do we see any reason to limit public controversy over police misconduct to Baltimore City. The records sought here are intended to assist the public in examining the Sheriff's use of force in the form of particularly invasive searches, *see Bell v. Wolfish*, 441 U.S. 520, 576–77 (1979) ("[B]ody cavity searches . . . represent one of the most grievous offenses against personal dignity and common decency." (Marshall, J., dissenting)), and the Sheriff's office's compliance with its own policy regarding those searches. And police accountability for invasive searches would seem to be a matter of *statewide* public controversy, as revealed by recent actions of our General Assembly. *See, e.g.*, Md. Code (2021, 2022 Repl. Vol.), § 3-524(d)(1) of the Public Safety Article (which requires that all police uses of force be "necessary and proportional" to prevent imminent threat of injury or effectuate a legitimate law enforcement objective); Md. Code (1984, 1999 Repl. Vol., 2024 Supp.), § 12-104 of the State Government Article (increasing the State's waiver of sovereign immunity for

31

intentional torts "or a violation of a constitutional right" committed by law enforcement officers specifically); Md. Code (2014, 2019 Repl. Vol., 2024 Supp.), § 4-311(c)(1) of the General Provision Article (expanding public access to records of police misconduct investigations). Indeed, police misconduct is a pervasive "nationwide" issue. *See Smith v. State*, 481 Md. 368, 408–12 (2022) (referencing the "'contemporary climate'" of controversy and protests over police misconduct in the aftermath of George Floyd's murder in 2020 when it held that "the bailiffs' display of the thin blue line flag on their face masks . . . created an unacceptable risk that the jurors would believe that the court was siding with law enforcement in this moment of political upheaval").

On remand, the Sheriff *must* consider "whether disclosure would shed light on a matter of public controversy and whether the complete denial of a waiver would exacerbate the public controversy." *Open Justice Balt.*, 485 Md. at 668. In doing so, the Sheriff should explain why the contemporary, nationwide, and Maryland concerns regarding police use of force do not relate to Calvert County. By the same token, the ACLU may need to amplify why its in-house "deidentified list of complaints" constitutes, in and of itself, a "public controversy" regarding the Sheriff's Office, with specific regard to invasive personal searches.

A custodian must consider each fee waiver request on a case-by-case basis and "give appropriate consideration" to *all* relevant public interest factors. *Action Comm. for Transit, Inc.*, 229 Md. App. at 561–63. The Sheriff failed to consider the public interest factors underlying the ACLU's fee request properly. The record leaves us no basis to support a

32

conclusion that the Sheriff's Office "meaningfully consider[ed] all relevant factors" to the public interest determination. *Open Justice Balt.*, 485 Md. at 620.

### C.    We Remand To The Sheriff To Reconsider The Public Interest Factor Of The Fee Waiver Decision.

The Sheriff asserts that the circuit court's order requires reversal or, at the very least, that the case has to be remanded. We are constrained to agree that it needs to go back, but the judgment is more properly vacated than reversed. *Open Justice Baltimore* held that the proper remedy for the wrongful denial of a requested fee waiver is a remand:

> [A]s discussed above, BPD did not consider all relevant factors in the course of exercising its discretion to determine whether a fee waiver in whole or in part would be in the public interest. This was a procedural defect in BPD's analysis. The circuit court found that BPD acted in good faith in the course of considering OJB's MPIA requests. In the absence of bad faith on the part of an agency decision maker or prejudice to OJB, the proper remedy for BPD's procedural defect is a remand to BPD for reconsideration of the public interest determination. We do not perceive any prejudice to OJB if we remand to BPD for a proper exercise of its discretion under GP § 4-206(e). OJB was entitled to an exercise of discretion that was not arbitrary and capricious; it was not entitled *ex ante* to a particular outcome. We trust that, on remand, BPD will consider in good faith all relevant factors that go into the public interest determination . . . . That is what OJB was, and is, entitled to under the MPIA. We also trust that both parties will proceed on remand in the spirit of collaboration upon which the MPIA depends for successful resolution of complicated requests for records that implicate competing interests.

485 Md. at 671–72 (citation omitted). The Court noted that the original request "came nearly four years ago" and urged the parties to collaborate "with new verve" to resolve the dispute. *Id.* at 672 n.36. The Court also directed BPD's records custodian to "prepare a

33

written explanation concerning the factors that were considered and how they were weighed" and provide it to the requestor. *Id.*

The ACLU responds that a remand for the Sheriff to consider its fee waiver request a third time "would be a woefully inadequate remedy" because "there is little doubt that the ACLU would receive anything more than a third arbitrary and capricious denial." The Sheriff's pre-litigation responses suggest that this fear isn't unfounded. Even so, applying *Open Justice Baltimore*, we cannot presume prejudice or bad faith from this record. The ACLU's first records request came less than three years ago, shorter than that in *Open Justice Baltimore*, where the Court found there was no prejudice.[10] 485 Md. at 672 n.36. And as the Supreme Court stated in *Open Justice Baltimore*, the ALCU is entitled to a good faith consideration of all relevant factors that go into the public interest determination, not any particular outcome. *Id.* at 672.

---

[10] Maryland Rule 7-403 regarding dispositions of administrative mandamus cases lends further support for a remand. The rule states that a reversal or modification of an agency decision is only warranted where there is prejudice to the substantial rights of a requestor:

> The court may issue an order denying the writ of mandamus, or may issue the writ (1) remanding the case for further proceedings, or (2) reversing or modifying the decision *if any substantial right of the plaintiff may have been prejudiced* because a . . . decision of the agency[] . . . is arbitrary or capricious.

(Emphasis added.) And if there was no prejudice to a substantial right in *Open Justice Baltimore*, there is no prejudice to a substantial right here. Remand to the Sheriff is appropriate. Should the ACLU seek further judicial review after the Sheriff's decision on remand, it should proceed under Maryland Rules 7-401 through 403.

Ultimately, *Open Justice Baltimore* controls the outcome here. The decision must go back to the Sheriff for a meaningful consideration of all relevant factors to determine "whether there is a public benefit to disclosure" and then re-weigh the next discretionary decision of "whether it would be in the public interest to grant a waiver of the fee in whole or in part." *Id.* at 654. If he chooses to deny the waiver again (in whole or in part), he must prepare a written explanation of the factors considered and how they were weighed in light of the considerations articulated in *Open Justice Baltimore* and in this opinion. *See id.* at 672 n.36.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY VACATED AND CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY WITH INSTRUCTIONS FOR THE COURT TO REMAND TO THE SHERIFF OF CALVERT COUNTY TO RECONSIDER THE FEE WAIVER REQUEST IN A MANNER CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY CALVERT COUNTY.**